CULLUM ET AL. v. BATRE'S EX'RX.

1. Whenever the interest of a party to a suit in Equity, becomes vested in another, by death or otherwise, the proceedings abate, either in whole or in part; and the regular mode of reviving in the name of the party, on whom such interest devolves, is by a *bill of revivor*.

2. Defective notices and irregularities in practice, are waived, if the parties appear, and proceed in the cause without objection.

3. An order of publication was duly made, and published, in order to bring in a nonresident defendant; and a decree *pro confesso*, rendered against him; but the record did not show, that publication had been made. *Held*, that it was allowable, even after a writ of error sued out, to prove that fact, and have it recited on the record in the Court below, *nunc pro tunc*, so as to prevent a reversal of the decree.

4. To a bill to foreclose a mortgage, a subsequent incumbrancer is a *proper*, but not an *indispensable*, party

5. The object to be effected by joining a subsequent incumbrancer, as a defendant, with the Mortgagor, is merely to conclude him as against the complainant; and to secure to the purchaser, under the decree of foreclosure, a title not liable to be attacked by such incumbrancer.

6. A subsequent incumbrancer, who is made a defendant to a bill of foreclosure, is not entitled to a decree against the mortgaged premises, for so much as may be due on his mortgage.

7. In the order, referring a bill of foreclosure, &c., to a master, to report an account, it is stated, that the "mortgage and notes" were "produced, and proved to the Court;" and the master reported, "that, on comparing the mortgage, bill, and notes, he finds due the complainant two notes, dated," &c. *Held*, that these recitals, together with the possession of the mortgage and notes, by the complainant, was sufficient to show that her testator was the proprietor of the notes by assignment; especially after a decree *pro confesso*.

8. It is not, in general, irregular to authorize the master to sell the mortgaged premises "in separate lots, or in whatever manner may best comport with the interest of the defendant; unless infants are interested, and then, it should be referred to him to report in what manner their interest should be sold.

9. A decree for a foreclosure and sale of mortgaged premises, is not erroneous, because it does not *expressly* require the master to report his proceedings to the Court, but directs him to make a deed to the purchaser.

CHARLES BATRE, the testator of the defendant in error, in April, 1838, filed his bill on the equity side of the Circuit Court of Mobile, against Chas. Cullum, Burlin Brown, Thomas J. Cawley and Charles Gascoigne, for the foreclosure of a mortgage of a tract of land, situate in the County of Mobile. The

mortgage was executed to Geo. J. S. Walker, by Brown and Cawley, to secure two promissory notes, amounting, in the aggregate, to the sum of three thousand six hundred fifty-seven dollars and fifty cents; and the notes and mortgage were transferred to the complainant.

It is further stated, that Cullum is the grantee of the mortgaged premises, by purchase from the mortgagor; and that Gascoigne is a subsequent incumbrancer by mortgage.

On the 17th April, 1838, a subpœna issued for all the defendants, but Gascoigne; and was executed on Cawley and Cullum. At the next succeeding term of the Court, an order of publication was made as to Brown, upon a showing that he resided without the limits of the State.

At the fall term of the Court, holden in 1838, an order was made in these words : " The complainant's death being shewn, and Adele Batre being the executrix of his last will and testament, it is ordered by the Court, that the cause stand revived, and that she be permitted to have the benefit of all the proceedings had in the cause. The complainant has leave to amend by adding an additional defendant."

On the 5th April, 1839, Gascoigne filed his answer; in which he admits the making of the mortgage and notes described in the bill; and states, that Brown and Cawley, on the 8th day of September, 1836, made their promissory note payable to him, at four months after date, for two thousand dollars; which was secured by a mortgage of the premises in controversy, bearing even date therewith, executed by Brown. The respondent admits, that Brown and Cawley have paid him one thousand dollars on the note; but insists that the balance, with interest, remains unpaid. He prays an account, &c.; and that, if the mortgaged property shall produce a sum sufficient to pay the debt of the complainant, then, the surplus, if any, may be paid to him.

About forty days after the answer of Gascoigne was filed, the bill was taken *pro confesso*, as to Brown, Cawley and Cullum, for failing to answer. Up to this step in the cause, the record does not show that publication, as ordered, was made as to Brown. The decretal order, after reciting that the bill was taken *pro confesso*, continues, " and the mortgage and

Cullum et al. v. Batre's Ex'rx.

notes being produced and proved to the Court, are, with the bill, referred to the Register to take an account between the parties, and report the same to the Court at this term."

At the same term, the master made his report, stating the sum due on the mortgage, which the bill seeks to foreclose; and, also, that " there is due to C. Gascoigne, on a promissory note, one thousand one hundred and eighty-nine dollars and ninety-nine cents." Thereupon the Court confirmed the report of the master; and adjudged, that the amount due on the mortgage, of which Batre was the assignee, should be first paid. The decree directs, that the defendants, within sixty days, pay into the office of the Register, "the amount reported to be due as aforesaid, with interest and costs; or, in default thereof, that then the Register aforesaid, sell the premises described in the complainant's mortgage," &c.; " that he sell the said premises in separate lots, or in whatever manner may best comport with the interest of the defendants. That he make a deed to the purchaser, and of the moneys arising from said sale, he pay the costs, and the complainant's demand, in the manner reported by the master ; and the balance, if any, bring into this Court, to abide its future order. And after said sale, the defendant's equity of redemption in and to said premises, be barred and foreclosed."

After the writ of error was sued out, the order of publication, made pending the cause in the Circuit Court, as to Brown, was produced in the Court below, printed in the paper in which it was directed to be made ; and the Register stated on oath, that it was duly published for the length of time required. The order of publication, and the evidence of the Register, were, by direction of the Court, spread upon the record *nunc pro tunc*, and have been sent up in answer to a *certiorari*, issued from this Court, founded on the suggestion of a diminution.

This cause, upon the organization of " Separate Courts of Chancery," was transferred to the Chancery Court sitting at Mobile ; and, by that Court, the final decree was rendered. The defendants have prosecuted a writ of error to this Court; but, under the rule upon the subject, Cullum and Brown alone, have assigned errors.

STEWART, for the plaintiffs in error.
CAMPBELL, for the defendant.

COLLIER, C. J.—It is objected to the decree of the Chancellor—1. That the suit abated by the death of the complainant, and has not been regularly revived. 2. That the defendant Brown was not brought into Court, so as to become subject to its decree, either by service of process, or publication. 3. The bill having been amended, after subpœna served on two of the defendants, and publication ordered as to a third, the decree *pro confesso* was erroneous; because it should have been preceded by new process. 4. That no decree could have been made in favor of the defendant Goscoigne for the amount due on his mortgage, without a cross bill.

5. That neither the bill itself, nor Gascoigne's claim, was sustained by proof to warrant the decree.

6. That the decree is erroneous, in not settling how the property shall be sold; and in directing a deed to the purchaser before the sale was confirmed.

7. That Cullum's title is subjected to the payment of Gascoigne's debt, without any bill filed by Gascoigne; and when it does not appear, that he claims under an older or superior title.

1. In Doe ex dem. Duval's heirs v. McLoskey, 1 Ala. Rep. N. S. 708, it was decided, that, whenever by death, or otherwise, the interest of a party to a suit becomes vested in another, the proceedings abate, either in whole or in part. For, as far as the interest of a party dying extends, there is no longer any person before the Court, by, or against, whom the suit may be prosecuted. The Court say further, "the regular mode of reviving a suit against the heirs of a defendant, dying during its pendency, we have already seen, is by bill of *revivor.*" In Shields v. Craig, 6 Monroe's Rep. 373, it was held, that where the complainant dies, the suit can only be revived by bill; and in Holdes v. Mount, 2 J. J. Marshall's Rep. 182, it is said, that it must be revived by a bill of revivor, and not by an order of Court. [Story's Eq. Plead. 289; and Bowie v. Minter et al. at this term.]

In the case before us, the order of Court, without giving leave to file a bill of revivor, directs, " that the cause stand revived," &c. This, it is insisted, is a mere irregularity; and was cured by the failure to object to it, while the suit was pending below. There can be no question, that defective notices and irregularities in practice, are waived, if the parties appear, and proceed with the cause, without objection. [Dunn v. Tillotson, 9 Porter's Rep. 272.] Let it then be conceded, that the order, which declares that the suit is revived in the name of the complainant's executrix, is an irregularity which may be waived; yet the record furnishes no *data* from which a waiver may be inferred. Neither Brown nor Cullum appeared below—their non-appearance is expressly stated, and a decree *pro confesso* rendered against them.

The vitality of the cause having been suspended by the death of the complainant, and not being regularly revived, no decree could be rendered, affecting the interest of the defendants.

2. True, the record, at the time of rendering the decree, did not show that publication of the order, as to Brown, had been duly made; yet, since the writ of error was sued out, it has, in this particular, been perfected, *nunc pro tunc*. The proof was doubtless made to the Court before the decree *pro confesso* was rendered; but its entry upon the record was then omitted; and the Court, in allowing the amendment, only permitted that to be done, which there was a sufficient warrant for doing at the proper time.

Publication is the mode pointed out by statute, for bringing a non-resident defendant, in a suit in chancery, before the Court, where a subpœna cannot be served on him personally, or he declines to appear of his own accord. It is but a substitute for process; and where it is proper to be made, is quite as efficient in authorizing the action of the Court.

In Hefflin v. McMinn, 2 Stewart's Rep. 492, and in subsequent cases, this Court has considered that it was permissible for a sheriff to amend his return on original process *nunc pro tunc*, not only after judgment, but even after a writ of error was sued out. And it has been holden, that, where a judgment has been rendered for too much, or too little, in conse-

quence of a clerical error, it may be amended in the Court below, notwithstanding error brought; and the amended judgment will be affirmed, without damages, at the costs of the defendant in error. [Brown & Parsons v. Tarver, Minor's Rep. 370 ; Evans v. St. John, 9 Porter's Rep. 186.]

The evidence of the Register, according to a rule applicable to *nunc pro tunc* entries in general, was not admissible: namely, that such an entry cannot be made, unless there be something of record to authorize it. But that rule has not been applied, where the object of the amendment is to show that process was served. Now, the publication being intended as a substitute for the personal service of process, and designed to bring the defendant before the Court, that the cause may progress to a hearing, by analogy, it would seem to be competent, even after decree, to show to the Court, that publication was regularly made.

3. In respect to the third ground of error relied on, it is unnecessary to inquire whether, where a bill is amended before answer, and after subpœna served, new process should issue to the defendant to answer the amendments. For, though leave was given to the complainant's executrix to amend the bill, " by adding an additional defendant," yet, in point of fact, no amendment was ever made.

4. Gascoigne, though a proper, was not an indispensable, party to the bill. It was competent for the complainant, to have proceeded against the mortgagors, without joining, as a defendant, either a prior, or subsequent, incumbrancer. The rights of the former are paramount, and those of the latter will not be concluded, *unless he is made a party*. The head note to Judson v. Emanuel et al, 1 Ala, Rep. N. S. 598, would indicate a different decision ; but, in the case itself, the law is laid down as we have stated it.

The law upon this subject, is examined by Mr. Justice Story, with his usual research, Eq. Plead. 177, *et post;* and he intimates an opinion in accordance with Mr. Calvert, that, though not absolutely necessary, the safe course is to make all subsequent incumbrancers, of whom the plaintiff has knowledge, parties; and to pray that the decree may be made conclusive against them. [See Calvert on Parties in Eq. 128 to 138.]

But the question we are examining is, not whether Gascoigne was an indispensable party; it is, whether he was entitled to a decree for the foreclosure of his mortgage?

In Harris et al. v. Carter's ad'mr. et al., 3 Stew. Rep. 233, the bill, among other things, prayed that the assignees of a note be injoined from proceeding thereon by suit at law. At the hearing, a decree was rendered against the complainants, in favour of the assignees, for the amount of the note and interest. The Court thought the decree erroneous, and say, "they" (the defendants) "had exhibited no bill asking the coercion of its" (the note's) "payment; and upon their answer, they are only entitled to a decree for costs. If one, who is made a defendant in Chancery, would obtain relief against the complainant, his remedy is by cross bill; when the answer has responded to the bill, it prays that the defendant may be dismissed with his costs; and this is the only prayer which it is competent to embrace in the answer." (See Lube's Eq. Plead. 39, 103, 228, to the same effect.)

It is true, that in Morris et al. v. Terrell, 2 Rand. Rep. 14, the Court determined, that one of the defendants was entitled to a decree against his co-defendant. But that was a case entirely unlike the present. It was a bill filed by a principal, against his agent, and a purchaser of the principal's real estate from the agent, to set aside the purchase, upon an allegation of a breach of trust, and a fraud by the agent, to the prejudice of his principal. The sale was adjudged invalid, and consequently set aside; and a decree was directed to be rendered in favor of the purchaser (to whom no fraud was imputed) against the agent. To this point, see Chamley v. Lord Dunsanny et al., 2 Sch. & Lef. Rep. 690.

The counsel for the defendant in error, has cited many cases determined by the Court of Chancery of New York, which he insists very fully sustain the decree in favor of Gascoigne. The first of these, is the case of Renwick v. McComb et al., Hopkins' Rep. 277, which was a bill for the foreclosure of a mortgage, to which a subsequent incumbrancer was made a party. On taking the account before the Master, the question whether any thing, or how much was due to the subsequent incumbrancer, was a matter of litigation between the mortgagor and him-

self. The complainant asked the Court to direct the Master to report how much was due to him, as it was not contested that the cause might be then set down for hearing. *The Court said,* "the regular course is, that all incumbrances should be reported before a decree of sale. It is important to preserve this course for the interest of the defendant, who must know the amount of the incumbrances before he can redeem. It would also be inconvenient, to divide the cause into separate parts, to adjust the rights of each incumbrancer."

The other case, is the Union Ins. Co. v. Van Rensselaer, 4 Paige's Rep. 85; the opinion of the Court refers to the case of Renwick v. McComb et al., as ascertaining the *practice* at the time it was decided; but states that "new rules" have been since adopted, which prevent the first mortgagee from being delayed by controversies between subsequent incumbrancers. These cases were, doubtless, determined under the influence of rules applicable alone to the Chancery proceedings in N. York. The case cited from Hopkins, is a very brief report; but is noted by the reporter, as a case of practice, and so treated in the subsequent decision.

The right of subsequent incumbrancers to the surplus, cannot with propriety, arise until it shall be ascertained that there is a surplus; and this cannot be known, before the mortgaged premises have been sold, and the debt of the prior incumbrancer, together with all costs fully discharged. The object of joining them as defendants with the mortgagor, is merely to conclude them as against the first mortgagee, and to secure to the purchaser under the decree of foreclosure, a title not liable to be attacked by a subsequent incumbrancer. It is not intended, by bringing the subquent incumbrancer before the Court, to give him a decree for so much of the surplus, as may be necessary to satisfy his lien—he may, if he can, show that he is entitled to a preference over the complainant, and thus defeat him. But, if he would obtain a decree for his demand, he must become an actor in Court. It is however, needless to consider this point further, as the rules of practice recently adopted, provide so clearly for the adjustment of the claims of subsequent incumbrancers, as to leave but little room for further controversy.

5, 7. The view taken of the last question, makes it unnecessary to inquire into the sufficiency of the proof of Gascoigne's note and mortgage; or, whether the mortgage was an operative lien, as against the title of Cullum. The notes made by Brown and Cowly to Walker, and the mortgage executed as a security for their payment, are described in the bill; and it is alledegd, that Walker endorsed the notes, and assigned and delivered the mortgage to the complainant for a valuable consideration. In the order, by which a reference was made to the Master to report an account, it is stated, that the "mortgage and notes" were "produced and proved to the Court;" and in the transcript, we find the copy of a mortgage, corresponding with that recited in the bill. It does not appear, from the evidence sent up, or any recital in the record, that the assignment of the notes and mortgage was made as alledged; yet, the Master reports, that, on comparing the mortgage, bill and notes, he finds due the complainant, two notes, dated 4th February, 1836," &c. If the recital in the record warrants the inference, that the notes were endorsed as alledged; then the objection, that the proof is defective, cannot avail the plaintiff in error. The statement in the reference to the Master, "that the mortgage and notes were produced and proved in open Court;" has been held to be sufficient to show, that the notes and mortgage were identical with those described in the bill. [Levert et al. v. Redwood, 9 Porter's Rep. 92.] So it has been held, that, after a decree *pro confesso*, a less amount of proof will be required to make out the complainant's case, than if the facts were contested by a plea or answer. [Wilkins & Hall v. Wilkins, 4 Porter's Rep. 245; Levert et al. v. Redwood, 9 Porter's Rep. 93.] In the present case, the decree was *pro confesso*, as to all the defendants but Gascoigne, and he did not deny; but, so far as he answered, admitted the allegations of the bill. We are are then, of opinion, that the possession of the notes and mortgage by the complainants, together with the circumstances referred to, were sufficient to have authorized a decree of foreclosure.

6. It is objected to the decree of the Chancellor, that it authorizes the Master to sell the mortgaged premises "in separate lots, or in whatever manner may best comport with the

interests of the defendants;" and thus invests him with a discretion, which he may exercise to the prejudice of the parties interested in the equity of redemption. This objection was, probably suggested by the generality of the language employed in Walker et al. v, Hallet, 1 Ala. N. S. 391, 2; a case in which, some of the defendants were infants. But in Ticknor v. Leavens' Exr., at this term; it was in effect held, that it is not in general erroneous, to confer upon the Master, the authority to sell the mortgaged premises in the manner it has been done in the case at bar, unless infants are interested; and then a reference should made to the Master, to report whether the interest of the infants, require a sale of the property in separate parcels, or all together; and if a part only, then what part. Here there are no infant defendants; and we can conceive no sufficient reason for holding, that the discretionary power given to the Master, is fatal to the decree.

In Mussina v. Bartlett, 8 Porter's Rep. 277, it was objected to the decree, that it did not direct a report to be made to the Court, of the sale of the mortgaged premises. But this Court thought, that the power of the Chancellor over the officer executing the decree, to correct any irregularities in his proceedings, was ample, without expressly requiring a report to be made; and consequently overruled the objection. The fact, that a deed was directed to be made to the purchaser, before a confirmation of the sale, cannot make an order setting aside the sale, less effectual. [Mobile Cotton Press, &c. v. Moore & Magee, 9 Porter's Rep. 679.] Consequently, the direction to the Master to convey, is entirely unimportant. Without attempting to recapitulate, the decree, for several of the causes examined, must be reversed and the cause remanded.