# Randolph *et al. v.* Billing.

*Bill in Equity by Surety on Bond of Probate Judge to be Subrogated to the Lien of the State.*

1. *Official bond of probate judge; operates as lien on his property; not retroactive.*—By express statutory provision (Code of 1886, § 265), the official bond of a probate judge and of other named officers is declared a lien on their property from the date of its execution, and effect is to be given to this lien as if it were expressly declared as a stipulation of the bond itself; but the statute has no retroactive effect,

and can, therefore, exert no influence in any way upon independent transactions occurring prior to the execution of the bond.

2. *Same; lien of additional bond; right of subrogation thereunder as against an intermediate mortgage.*—Where, between the time of the execution of his official bond, upon entering into his office, and the execution of an additional bond, as required by the grand jury, a probate judge executes a mortgage upon certain described property owned by him, the lien of the State which arises out of the execution of the first bond, which is anterior to the mortgage, can not equitably be made the basis of a right of subrogation in favor of a surety on the additional bond, who has paid the defalcation of his principal, as against the mortgagee and those claiming under him; the additional bond having no retroactive effect and exerting no influence upon the mortgage which was an independent transaction occurring prior to the execution of the bond, and being entered into without reference to any lien in favor of the State created by such additional bond.

3. *Same; transfer of lien by State.*—Where the surety on the official bond of a probate judge pays the defalcation of his principal, the State can not enlarge such surety's equity by a transfer or agreement to transfer its lien to him. The debt of the State having been paid, its lien was discharged; and if the surety was not entitled to the equitable right of subrogation by succession, the State could confer none by an attempt to transfer the debt which he had paid and the lien which had been discharged.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. DAVID T. BLAKEY, Special Judge.

The facts of the case are sufficiently stated in the opinion.

HORACE STRINGFELLOW, for appellant.—1. The lien of the bond upon which the original bill was based, can form no part of any relief that might be granted upon the bill as amended, for it was executed subsequent to the execution of the mortgage. The bill as amended, therefore, makes a new case; it asserts a new title, to which the bond stated in the original bill is merely an inducement. The 7th ground of demurrer to the bill as amended was, therefore, well taken.—*Ward v. Patton,* 75 Ala. 207; *Penn v. Spence,* 54 Ala. 35.

The allegation of the amendment of the bill that the State had agreed to assign its lien upon said bond to the complainant, does not give the bill equity.—*Underhill v. Fire Ins. Co.,* 67 Ala. 45; *Bercy v. Lavretta,* 63 Ala. 374;

*Jones v. Latham*, 70 Ala. 164; *Richard v. Richard*, 98 Ala. 599. Nor is appellee a co-surety with the sureties upon the bond executed August 12th, 1886, as claimed by him, except in their relation to each other. The statute merely gives him the same remedies against the sureties on said original bond as co-sureties have against each other. Appellee could only be proceeded against by action upon the bond executed by him, either in the same proceeding with the other bonds or in separate proceeding.—Code of 1886, §§ 285, 286. Nor are the rights of appellee enlarged by section 3157 of the Code. "That section authorizes a surety to pay a judgment obtained by any creditor against himself and his principal and to have the judgment assigned to himself. He is *thus* empowered to assert in law or equity any lien or right against the principal which the plaintiff could assert if the debt had not been paid." "That section gives a new and statutory remedy, and to avail himself of it the party suing must bring himself within its terms.—*Vandeveer . v. Ware*, 65 Ala. 608; *Blackman v. Joiner*, 81 Ala. 344.

3. The lien attached to the bond of a judge of probate is a lien by contract as much as that of a mortgage would be and operates as a mortgage would to a mortgagee with the exception that it can be carried into effect as a specific lien only in a court of equity.—*County of Dallas v. Timberlake*, 54 Ala. 412; *Knighton v. Curry* 62 Ala. 412; *Watts v. Bank*, 76 Ala. 478.

George F. Moore and John G. Finley, *contra*.—1. The first and second bonds are, in effect legally one under the statutes, the sureties on the additional bond being made co-sureties with those on the first.—*State v. Lott*, 69 Ala. 147; Code of 1886, §§ 285, 286. This is the general principle independent of the statute.—21 Amer. & Eng. Encyc. of Law, p. 877. "Where an officer holding for a term of more than one year is required to file a new bond annually, the several bonds so filed during the same term are cumulative, and the sureties upon them will be held liable *pro rata*."—Mechem on Public Officers, 190, § 293, and authorities cited.

2. For any default on the part of Randolph, after the execution of the second bond both bonds were liable, but the State had its lien on the property of the principal in

both bonds—the mortgaged property—and on payment
by either of the sureties they have a right to be subro-
gated to the lien of the State. "When the sureties on
the official bond of the judge of probate paid his defal-
cation they had a right to be substituted in stead of
the State, and the persons to whom he was in arrears
are entitled to enforce for their protection and repay-
ment all the liens and remedies held by the State," &c.
*Watts v. Bank*, 76 Ala. 478; *Knighton v. Curry*, 62
Ala. 412.

HEAD, J.—This is a bill by F. M. Billing against
F. C. Randolph, Lombard Loan and Investment Com-
pany, Lucy E. Prescott and Charles P. Nunn, to enforce
subrogation to the statutory lien of the State upon
property of Randolph, mentioned in the bill, arising
from an alleged defalcation of Randolph, as judge of
probate of Montgomery county, the amount of which
was paid by the complainant as a surety of Randolph.
The original bill was filed December 9, 1895, and
averred that on the 22d day of August, 1886, said Ran-
dolph was elected judge aforesaid; that on July 31,
1891, he executed an official bond in the sum of $25,000,
complainant being one of the sureties thereon; that
while acting under said bond, Randolph became a de-
faulter to the State for moneys received by virtue of his
office in the sum of $1,500; that on August 1, 1895, the
State brought a suit upon said bond against complainant
and T. J. Williams, as sureties thereon, in the circuit
court of Montgomery county, and on November 30,
1895, a judgment was rendered in said suit against the
defendants therein for said sum, and on December 6,
1895, complainant paid the amount of said judgment
and costs, amounting in all to $1,400. The bill then
avers the ownership of Randolph of the land described
in the bill, at the same time of the execution of said
bond, and proceeds further to aver that, on May 1, 1890,
Randolph and his wife executed a mortgage on said land
to the said Lombard Loan and Investment Company to
secure a loan to him made contemporaneously with the
execution of the mortgage; that the mortgage purported
to have been transferred to Lucy E. Prescott, and on
October 21, 1895, it was foreclosed, under power of sale
therein, and Charles P. Nunn became the purchaser. It

is averred that said Lucy E. Prescott and Charles P. Nunn are still interested in said property in a manner unknown to complainant.

On April 13, 1896, the complainant filed an amendment to said bill, adding thereto additional paragraphs, in which it was averred that Randolph, on August 12, 1886, executed an official bond in the penalty of $25,000 with H. C. Moses, W. D. Brown and C. T. Pollard as sureties thereon ; that he continued in office for the full term of six years thereunder. It is further averred that, on July 26, 1891, he was required by the grand jury to execute an additional bond, and thereupon he executed, as an additional bond, the bond set out in the orignal bill upon which the complainant and Williams were sureties ; that on the same day of the suit against complainant, the State of Alabama instituted suit against W. D. Brown and C. T. Pollard, as sureties on said first bond. It is then repeated that complainant paid the judgment rendered against himself, stated in the original bill, and is averred further that the State of Alabama, through its legally constituted authorities, has agreed to transfer to complainant the lien of the State which it held, by virtue of the execution of said bond, upon the said property of Randolph. It is next averred that said Brown paid the judgment recovered against him, amounting to $1,405, with cost of suit, on the 30th day of November, and on the same day filed his bill in this court to be subrogated to the lien of the State on said property, which bill is now pending. The prayer of the amended bill is that it be decreed that the execution of said bonds created a lien on the property described in the bill which operated a mortgage on the property enforceable in this court, etc.

There was a subsequent amendment alleging that the judgment paid by Brown is the sole recovery upon the first bond ; that there are no suits pending on the first bond, and complainant is not informed that there is any other claim against it. Said Lucy E. Prescott and Charles P. Nunn appeal from the decree of the chancellor overruling their demurrers to the bill as amended.

Section 265 of the Code provides that the bond of the judge of the probate court * * * * * is a lien upon the property of the principal from the date of its execution.

Sections 279 *et seq.* provide for the requirement and giving of additional bonds by certain officers, including judges of probate, which must be in the same penalty, and payable, conditioned, approved and filed in the same office, as the first official bond. Section 284 provides that: "Every such additional bond is of like force and obligation on the principal and sureties thereon, from time of its approval, and subject to the same remedies, as the first official bond." Section 285 provides that the giving of the additional bond does not discharge any bond previously executed, "but each remains of the same force and obligation as if the additional bond had not been given ; and any person aggrieved can have his remedy upon either or all of such bonds, in the same or in separate proceedings." Section 268 secures the right of contribution among the several securities on the several bonds, treating all as co-sureties, with the rights and remedies among themselves of co-sureties.

The demurrers aptly raise the question whether the lien of the State, which arose out of the execution of the first bond, which was anterior to the mortgage in question, (which lien, confessedly, attached to the property now involved, paramount to the mortgage lien, as security to the State for the amount of defalcation which complainant was put to pay), can, equitably, be made the basis of the right of subrogation in favor of this complainant, *as against the mortgagee and those claiming under it,* whose mortgage was executed before the execution of the additional bond upon which complainant first became a surety. This right of subrogation is a creature of the court of equity, intended for the accomplishment of right and justice ; and it is bound by no arbitrary, rigid rules of law, which, in any case, might work wrong or injustice. The question, then, before us is determinable by those principles of equity which shall be found most conservative of justice to the parties.

The mortgage out of the way, there can be no doubt that the complainant, discharging, by virtue of his obligations as a surety, the lien which the State had upon the property of Randolph, became entitled to enforce the State's lien, for his own use, under the principle of subrogation now invoked. The State held, as against Randolph and any one deriving title from him after the

execution of the first bond, a lien for the defalcation, under that bond; and under the additional bond, also, as against Randolph and any one deriving title from him after the execution of such additional bond; and when complainant paid for a default occurring after he became bound as a surety his equity against them became clear.

But complainant rested under none of the obligations of the first bond. His bond had no retroactive effect. *Watts v. Eufaula National Bank*, 76 Ala. 474. He became liable only for defaults occurring subsequent to the execution of the additional bond. Before he assumed this obligation, and of course, before the State had, or could have had, any lien upon the property of Randolph, perfect or inchoate, under and by virtue of the additional bond, the mortgage under which appellants claim was executed by Randolph.

It is a sound rule of law, and equity as well, that the rights of persons arising out of their acts, must be judged by the facts and circumstances comprising and surrounding the acts when performed, considered in the light of the existing rules of law or equity applicable to them. In the absence of some intervening equity or positive rule of law which postpones or estops a party in the assertion of a right, no subsequent, voluntary act of other parties will be suffered to impair in the slightest degree a right fairly acquired under conditions of law and fact existing at the time the same was acquired. On May 1st, 1890, the State, by virtue of a bond executed by Randolph, as principal, and Moses, Brown, and Pollard as sureties, on August 22d, 1886, preceding, had an inchoate lien upon the property of Randolph to secure any default on his part, as judge of probate, which might occur during his term of office, which would expire in November, 1892. This bond was the sole basis and cause of the lien, then having any existence. By it alone, did the law measure the existing rights of all parties connected with, or growing out of it. A bond executed by Randolph, as principal, and complainant and Williams as sureties, on July 31st, 1891, having by law no retroactive effect, could, of course, exert no influence, in any manner or form, upon independent transactions occurring on May 1st, 1890; nor could it be looked to, or invoked, in the prosecution of any supposed legal or equitable remedy which would

[Randolph *et al.* v. Billing.]

have the effect of impairing rights growing out of those transactions, or which would, in any manner, subject the parties to such transactions, to remedies, suits or causes of action of any kind, which were not legally incident to, or involved in such transactions. by reason of facts or conditions then existing, and with reference to which the parties are presumed to have contracted. On that day, May 1st, 1890, the Lombard Loan and Investment Co. loaned its money to Randolph, and took from him the mortgage security. This security it acquired subject to the lien of the State then existing. It acquired it subject to all equitable rights of subrogation which might arise in favor of Moses, Brown and Pollard, by virtue of their being sureties on the then existing bond of Randolph. The mortgage contract was entered into without reference to any lien in favor of the State, to be created by any additional bond to be afterwards executed, and without reference to any right of subrogation, or other right or remedy of complainant, which might spring from any bond he might afterwards execute, as a surety for Randolph. To subject the mortgage now to the remedy of subrogation which the complainant seeks, would be to impose upon it burdens it never assumed, manifestly prejudicial to the rights secured by the contract.

The fact that the State has agreed to transfer its lien to complainant, even if it appeared that the agreement was made before the original bill was filed, does not affect the result. It adds nothing to complainant's supposed equity. The debt to the State was paid. Its lien was discharged. If complainant had no equity, by succession, under the doctrine of subrogation, the State could confer none by an attempt to transfer a debt that was paid and a lien that was discharged.

We are of opinion there is no equity in the bill, and that the demurrers ought to have been sustained ; and a decree will be here rendered to that effect, with leave to the complainant to amend within such time as the chancellor may allow.

Reversed, rendered and remanded.