# Jones *v.* Davis *et al.*

*Bill to Set Aside Mortgage Sale and Remove Cloud from Title.*

.1. *Lien on land of mortgage inferior to that of note for purchase money and a second mortgage to secure it.*—Where the purchaser of land gives his note for the purchase money, and then gives a mortgage on the land to one who is informed of the existence of the purchase money note; and afterwards the vendor takes from the purchaser a mortgage on the land to secure payment of the note for purchase money, and then transfers this note and mortgage, the transferee has the superior lien on the land to the first mortgagee, whether the giving and acceptance of the mortgage for the purchase money did or did not destroy the vendor's lien of the purchase money note.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. W. R. FRANCIS, Special Chancellor.

[Jones v. Davis *et al.*]

This is a suit by bill in equity brought by Malinda J. Jones against O. P. Davis and others to foreclose a mortgage. The facts are stated in the opinion.

HARRIS & EYSTER and S. T. WERT, for appellant. No brief came to the hands of the reporter.

E. W. GODBEY, *contra.*—The mortgage to O. P. Davis, Admr., was a continuance and preservation of the lien for the purchase money.—*Wilson v. Knight,* 59 Ala. 172; *Keiser v. Baldwin,* 62 Ala. 526; *Feuche v. Swain,* 80 Ala. 151.

TYSON, J.—This appeal is prosecuted by the complainant from a decree dismissing her bill, adjudging an unrecorded mortgage which she alleges was executed by J. L. Davis to her in 1883 as subordinate to the lien of the respondent Mary J. Davis, acquired by her by certain transfers which will be noticed later on.

The facts appear, without dispute, to be, that in 1883, J. L. Davis purchased the land, claimed by complainant to have been conveyed to her by mortgage, from J. J. Davis paying part of the purchase money in cash and executing his note for the balance. That complainant was present when this purchase was made by her son J. L. Davis and knew of the giving by him of his note for the balance due as purchase money. That after the purchase by her son and he had received a deed from J. J. Davis to the land, she claims that J. L. Davis executed to her the mortgage upon which she bases her right to maintain this suit.

Some years after this sale and purchase, J. J. Davis died, and O. P. Davis was appointed administrator of his estate. Finding that J. L. Davis had not paid to his father the balance due as purchase money upon the lands, he called upon him and had him to execute the mortgage of Feb. 10, 1889, to better secure the purchase money note. This mortgage and debt was afterwards transferred by him for a valuable consideration to his mother, Mary J. Davis, and widow of J. J. Davis, who a few days thereafter acquired by transfer a note and mortgage executed by J. L. Davis to one Culver which

latter mortgage was a superior lien upon the lands to either complainant's or the one owned by O. P. Davis as administrator. The mortgage acquired by her from O. P. Davis as administrator was foreclosed and the land purchased by her at the sale. No point is made upon the regularity of this foreclosure sale or the transfer of the mortgage to her, by appellant's counsel, and we will therefore not inquire into them.

The only insistence is, that the lien of the mortgage was subordinate to the rights of the complainant. Pretermitting a discussion of the question as to whether O. P. Davis knew of the existence of the complainant's mortgage when the mortgage to him as administrator was executed, about which there is an irreconcilable conflict in the testimony, but conceding that he did, complainant's lien is subordinate to the equitable rights of Mary J. Davis who became by transfer the owner of the debt which J. L. Davis owed as a balance on the purchase money of the land.

The taking by O. P. Davis as administrator of the mortgage was confessedly to secure the balance due his intestate's estate upon this land purchase, and no other consideration entered into the transaction. He had, as administrator, a vendor's lien upon the land, which was superior to complainant's mortgage lien, and without deciding as to whether an acceptance by him of this note and mortgage was a waiver *inter partes* of his vendor's lien, it certainly had no such effect so as to allow the inferior lien of a stranger to intervene and become superior to his equitable rights to have the lands stand as a security for the debt due by the mortgagor upon the lands to his vendor.

In the case of *Thorpe Brothers v. Durborn*, 45 Iowa 192, it was said, that "in exchanging one form of security for another for the same debt, no other lien can intervene and become paramount thereto. Where the vendee of real estate under a verbal agreement of purchase erected thereon a building to which a mechanic's lien attached and subsequently thereto he received a deed and executed a mortgage for the purchase money, held that the lien of the mortgage was paramount to the mechanic's lien." See also *Armstrong v. Ross*, 20 N. J.

[Jones v. Davis *et al.*]

Equity, 109; *Eggeman v. Eggeman,* 37 Mich. 436.

The principle here involved was recognized and enforced by this court in the case of *Fouche v. Swain,* 80 Ala. 151, where the facts appear substantially to have been as follows: Mrs. Swain and her husband sold certain lands in 1869 to Prior, the legal title to which was in the husband, he paying a portion of the purchase price in cash and executing a deed of trust in favor of Mrs. Swain to her husband as trustee upon all the lands embraced in the deed of the Swains to him. This deed of trust was filed for record, but before its actual recordation, Prior being indebted to Cothran, Son & Co. executed to them a deed of trust during the same year upon the same lands which was recorded on the day of its execution. A year or two after the execution of the last mentioned deed of trust, a bill was filed by the Swains to foreclose the deed of trust held by them. This foreclosure suit was compromised by the Swains and Prior resulting in Prior's executing a deed to the lands to Mrs. Swain; the owner of the second deed of trust not being a party to the foreclosure proceedings or participating in the compromise. Upon these facts this court said: "The title of Mrs. Swain being superior to complainant's we can see nothing in the facts of the case by which this priority has been lost or forfeited. It is shown that in January, 1870, a bill was filed by Mrs. Swain to foreclose her trust deed against Prior. This suit, however, was compromised, and pursuant to the terms of settlement between the litigants, Prior and wife conveyed the mortgaged lands—or more properly speaking, their interest in them—to Mrs. Swain by deed bearing date October, 1872. It may be conceded this deed did not affect the rights of complainant as acquired by the transfer to him of the Cothran trust deed, because Prior could convey no better title than what he owned. No more did it affect the prior mortgage and superior title of Mrs. Swain. It may have satisfied it as between her and Prior, just as the successful prosecution of the foreclosure suit would have done. But as to any junior incumbrancer, her superior equity would still be preserved in its full force and vitality. There would be but poor show of logic in holding that this strengthening of her title by Mrs.

[Birmingham Railway & Electric Co. v. Smith.]

Swain has, after all, but served to weaken it. It is common practice for chancery to keep alive equitable liens and incumbrances as against strangers or third parties. Equity could often be but badly administered without it."

We have considered the only question suggested but not argued in appellant's meager brief. And, indeed, we could have affirmed the decree of the lower court, under the rules of this court, for want of a sufficient brief by appellant's counsel. However, as the question involved was of importance we have considered it.

We find no error in the decree of which the appellant complains. The decree must be affirmed.

Affirmed.