(128 So. 220)

**SHADDIX et al. v. NATIONAL SURETY CO.**

**7 Div. 917.**

Supreme Court of Alabama.

March 27, 1930.

Rehearing Denied May 22, 1930.

Pruet & Glass and A. L. Crumpton, all of Ashland, for appellants.

Hardegree & Cockrell, of Ashland, and Ball & Ball, of Montgomery, for appellee.

FOSTER, J.

On October 21, 1921, M. P. Shaddix began his term of office as tax collector of Clay county, and continued as such until he died October 2, 1924. Appellee was the only surety on his official bond. In June, 1923, an examination of his accounts for the tax year beginning October 1, 1921, was made by a state examiner, with a small balance due him upon an adjustment of some unsettled amounts. The next examination was finished in October, 1924, after his death, and related to his accounts beginning October 1, 1922, and extending to the date of his death. This embraced two tax years. Pursuant to said report appellee made payments as follows:

To the county .................... $2,228 74
To the state ..................... 74 92
To the tax assessor .............. 193 21
_____
$2,496.87.

The bill in this case was then filed by appellee to enforce its claim of subrogation to the lien of the state and county upon certain property of Shaddix. Appellants claim that their rights in such property are of a superior nature to that of the state and county to which appellee seeks subrogation. The decree was in favor of appellee, establishing its right of subrogation to all the property involved, and as superior to the claims of all the respondents.

We will treat the questions which are argued by appellants in brief. It is claimed that in September, 1923, the First National Bank of Ashland loaned Shaddix $3,000 on personal security. At that time he stated to the president of the bank that he was short to that extent. The bank was county depositary, and the money was placed to his credit in it as other public funds. He repaid to the bank $1,000 of this amount prior to his death. After his death, his widow paid the balance of $2,000 out of her insurance money. She claims a lien superior to that of appellee, due to a claim of subrogation to that extent to the lien of the state and county. The debt was not secured by a mortgage.

It may be quite true, as argued for the widow, that if there is a lien on the homestead of her deceased husband, and she pays it to protect her homestead rights, she is thereby subrogated to the rights of the lienor, as against others having claims against it, when subrogation is necessary to that end. 25 R. C. L. 1346. But when the widow paid the $2,000 to the First National Bank, the

latter had no such lien. Not being so situated that it had any subsisting interest to protect, the nature of subrogation, if it exists, is such as results from an agreement express or implied, called "conventional subrogation." Sheldon on Subrogation, §§ 247, 248. It is necessary that the parties expressly agreed that the lender should be subrogated, or that under the circumstances it appears to have been contemplated by the parties. Sheldon on Subrogation, § 247; 25 R. C. L. 1337; 37 Cyc. 468. When there is such agreement, express or implied, it is not necessary that one shall have a previous interest, for if at the instance of the debtor he advances money for the payment of an existing lien, and he sees to it that the money is so used, he is not in any true sense a volunteer or stranger, and is entitled to subrogation, if such is shown to have been the contemplation of the parties. Arnett v. Willoughby, 190 Ala. 530, 67 So. 426; 3 Pom. Eq. § 212.

■ There is authority for the conclusion, that if the lender relies upon other security, he is presumed not to expect or to be entitled to subrogation. 37 Cyc. 470.

The bank in making the loan to Shaddix took as security the personal obligation of about eighteen (18) persons as sureties. There is no evidence that a lien was mentioned in any respect, and no effort was made to create one for the security of the bank.

■ Our conclusion is that these facts do not justify a reasonable inference that a lien was contemplated, in favor of the bank, as security for the loan.

■ Upon well established principles the widow could acquire no right of subrogation by paying a debt to the bank, when the bank had no lien or claim to which she could be subrogated.

On July 29, 1924, Shaddix borrowed $1,000 from appellants, Pruett and Phillips, for the purpose of meeting his shortage of county funds, and it was paid to the county depositary. The report of the public examiner shows that on July 31st, something more than $1,000 was credited to the collector by the county treasurer. On July 29th he executed a note and mortgage to Pruett and Phillips on land otherwise free of incumbrance, except the lien created by law by virtue of his office. The land had been acquired in January, 1924. Pruett and Phillips claim that they thereby became subrogated to the lien of the county to that extent, and that appellee's claim of subrogation is subordinate to theirs.

■ It is very well settled that if the money was advanced for the purpose of discharging a lien, and was used to do so, and that they were to have security on the land, they would be subrogated to the rights of the lienor. Under such circumstances, they would not be volunteers, and their rights would be superior to all those inferior to the lien which they paid. Shields v. Pepper, 218 Ala. 379, 118 So. 549; Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948; Corinth State Bank v. First National Bank, 217 Ala. 632, 117 So. 216.

■ In order that they may be held to acquire such right, the evidence must show that the money was advanced by one who had, or took, or contemplated, that he would acquire an interest, and that it was agreed that it should satisfy the prior lien, and lender applied, or caused it to be applied, in that manner. Pruett and Phillips, by their mortgage, acquired an interest sufficient to justify subrogation, if the other elements are found to exist. We have noted that, at the time of this transaction, he had not been reported by a public examiner to be short in his accounts, though they were then examining his books. In October, afterwards, they filed their report showing that after his credit on July 31st, of something more than $1,000, he was short to the county over $2,000. The president of the bank which was the county depositary testified that he was short. He was in position as such to know, and it was his duty to inform himself. He does not undertake to say to what extent the collector was short. It was the duty of the collector, on the 1st and 15th of November, and each month thereafter, to make a verified statement of what he owed the county and state for taxes, and pay the same to each, and on or before July 1st, to make final settlement with them both. Sections 3085–3088, Code. The time for final settlement had passed; the examiners were at work on his books. He stated to Pruett that he was short, and borrowed the sum of $1,000 from Pruett and Phillips to pay the county, on account of such shortage. This statement was made at the time the loan was negotiated. All of this clearly shows that he was in default to the county, in an amount equal to the sum Pruett and Phillips advanced him to pay the county, plus the sum which appellee later paid the county; that the total sum is the amount of his shortage on July 29, 1924. It is not necessary that the county have a judgment for the amount of the shortage in order to establish its lien, or that the right of subrogation may be accomplished. Schuessler v. Dudley, 80 Ala. 547, 2 So. 526, 60 Am. Rep. 124; Knighton v. Curry, 62 Ala. 404; Dallas County v. Timberlake, 54 Ala. 403.

■ Pruett and Phillips were under no obligation to pay any of the shortage. They knew of none, so far as the evidence shows, except the $1,000 they loaned to the collector, and, as we have shown, made this loan upon the security of a mortgage on land on which the county had a lien to secure its payment. To the extent of the amount of the shortage, which Pruett and Phillips paid, appellee was discharged. The right of appellee to a sub-

rogation to the lien of the county was to that extent diminished. He could not, in equity, obtain the benefit of such payment by diminishing his liability, and also have the benefit of a lien on the same land to the extent of the amount so used and applied for his relief. If they had bought the land from Shaddix at a fair price, and paid the full amount of the consideration on the shortage, appellee could not complain in equity.

■ But Pruett and Phillips, it is said, did not pay all the shortage, though they appear to have paid all of which they had knowledge. It is also said that their right of subrogation is dependent upon full payment. This is usually true for the reason that otherwise they would share ratably with the county and state in the enforcement of their securities, and such right is not an incident of subrogation. Fender v. Fender, 30 Ga. App. 319, 117 S. E. 676; 25 R. C. L. 1318 et seq.; Knaffl v. Knoxville B. & T. Co., 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C, 1181; National Bank of Commerce v. Rockefeller (C. C. A.) 174 F. 22; United States F. & G. Co. v. Union Bank (C. C. A.) 228 F. 448; Richeson v. National Bank, 96 Ark. 594, 132 S. W. 913; note, Ann. Cas. 1917C, 1183 et seq.

■ Nevertheless, when only a part of the debt has been thus paid, the right of subrogation exists if the principal has paid the remainder. Foos Gas Engine Co. v. Fairview Land Co. (Tex. Civ. App.) 185 S. W. 382; 25 R. C. L. 1319.

■ In the instant case this balance was paid by one who, so far as Pruett and Phillips were concerned, was primarily obligated to pay it as much so as the principal himself. Their rights were not lessened by the fact that appellee, instead of the principal, paid all the balance to the county and state. Neither would a court of equity under the circumstances permit appellee twice to get the benefit of the lien of the county upon this land, once when Pruett and Phillips paid the money on its security to the county, and now again in superiority of their right. So that, from every angle, their rights take precedence over those of appellee. Appellee is seeking subrogation to the lien of the county on this land. Pruett and Phillips have the right to say, as they do here, that appellee must first pay them. We think that it should be incorporated in the final decree, that the subrogation to which appellee is entitled, in so far as concerns the land embraced in the mortgage to Pruett and Phillips, is subject to their prior rights to the extent of $1,000, and interest from July 29, 1924.

On August 12, 1922, W. D. Mayo and wife executed a deed to Shaddix, the tax collector, conveying certain land. At the time the deed was executed, Shaddix made a mortgage on it and other land to Alabama National Life Insurance Company for borrowed money, and a day or two later, they executed a mortgage to Mayo upon the same and other land to secure the purchase money. The latter mortgage recited that it was subject to the mortgage to the insurance company. The evidence showed that $800 of the purchase money remains unpaid. Shaddix had previously contracted to buy the land, but had no deed until August 12, 1922, and has never paid the balance of the purchase money to the extent of said sum of $800. Appellee was decreed to be entitled to the lien of the state and county in priority over the purchase money mortgage of Mayo; and, of this, the latter complains.

In the case of Fidelity & Deposit Co. v. Richeson, 213 Ala. 461, 105 So. 193, this court referred to the fact that the lien of the state and county on the property of a tax collector was subordinate to a mortgage on the property in existence when the bond was made (Shields v. Hightower, 214 Ala. 608, 108 So. 525, 47 A. L. R. 506; Randolph v. Billing, 115 Ala. 682, 22 So. 468); especially a purchase money mortgage (Shields v. Pepper, 218 Ala. 379, 118 So. 549).

■ Uninfluenced by the recitals of the purchase money mortgage making it subject to that of the insurance company, and though the mortgage had the effect to waive the vendor's lien, it would ordinarily take precedence and have the same priority as such lien would have if not thereby waived. Hassell v. Hassell, 129 Ala. 326, 29 So. 695; Jones v. Davis, 121 Ala. 348, 25 So. 789; Threefoot v. Hillman, 130 Ala. 244, 30 So. 513, 89 Am. St. Rep. 39; 41 C. J. 528. We pretermit, for the purposes of this case, the effect on this question of including in the purchase money mortgage other land as security.

■ Under the authorities, the lien of the state and county only extended to the interest of the officer when he acquired the land, that is subject to existing incumbrances. But it took precedence over any mortgage or lien not upon the land when he acquired it, nor created for the purchase price, with the precedence of a vendor's rights, or for some other lien then existing. It, therefore, took precedence over the mortgage to the insurance company. So that we have presented a situation where the vendor-mortgagee became, by his own agreement, subordinate to the rights of a mortgage which was in turn inferior to the lien of the state and county. The abstract question then is, If a first mortgagee agrees to subordinate his mortgage to one which is third in point of priority, what is the relative standing of such first mortgagee to one who at the outset holds the position of second place in grade? It seems apparent that such first mortgagee thereby becomes subordinate to them both and occupies the third place. If such be the fact, appellee being subrogated to

the lien of the state and county, whose lien was the second in priority but became thereby the first, is entitled to the enforcement of such lien prior to the claim of the vendor-mortgagee, Mayo. The circuit court correctly so decreed.

There is also a question as to the land bought of one Davis which became a part of the homestead of Shaddix. Of the purchase price, $350 was not paid, but a note for it was given. For this Davis impliedly retained a vendor's lien. Some two or three years later, and while tax collector Shaddix executed a mortgage on this and other land to the Alabama National Life Insurance Company (above referred to), and with a part of the amount loaned on such security, he paid the balance of this purchase money to Davis. After the death of Shaddix, his widow paid the balance due the insurance company, and the mortgage was transferred to her through an intermediary. This balance was $833.76. The mortgage originally was for $1,000. Of the amount borrowed, the evidence shows that they used all that was not paid to Davis in improving the property. Mrs. Shaddix claims that she was entitled to the benefit of the equity of subrogation which the insurance company acquired by this transaction.

In order to entitle one to the right of subrogation when money loaned is used in paying off a prior lien, it is necessary that the lender made the loan for that purpose, and that he see that it is so used. Such use made by the borrower of a general loan, when according to the agreement with him the borrower could have done as he wished with the money, does not have the effect to extend the right of subrogation to the lender. 25 R. C. L. 1351; 37 Cyc. 476; 41 C. J. 531–532; Sheldon on Subrogation, § 19; Jones v. Lockard, 89 Ala. 575, 8 So. 103; Fry v. Hamner, 50 Ala. 52. Unless the loan is made for that purpose by the lender and it is so understood, as well as so used, the doctrine of the cases we have cited giving a lender the right of subrogation does not obtain. The evidence does not sufficiently show that an understanding was had to this effect with the insurance company, and that its use was pursuant to any such arrangement. Our view is that Mrs. Shaddix has not met the burden of proof in this respect, and that the decree of the circuit court to that effect was justified.

The claim that the mortgage was superior to the extent of the amount of the money borrowed, which was used in making improvements upon the property mortgaged, is not supported by the principle we have discussed. Shields v. Hightower, 214 Ala. 608, 610, 108 So. 525, 47 A. L. R. 506.

Appellants argue that the bill is subject to demurrer because it fails to offer to do equity. But this is not necessary unless there is shown in the bill something which complainant ought to do as a condition to the relief sought. Davis v. Anderson, 218 Ala. 557, 119 So. 670; Summers v. Jordan (Ala. Sup.) 125 So. 642.[1] The bill does not show the existence of such condition, and is not subject to the demurrer on that ground.

We have treated all the questions argued by counsel for the several appellants.

For the error in the decree which we have stated, it is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.