### DIRAGO v. TAYLOR et al.

### 8 Div. 497.

Supreme Court of Alabama.

June 22, 1933.

Rehearing Denied Sept. 28, 1933.

Andrews, Peach & Almon, of Sheffield, and John E. Deloney, Jr., of Tuscumbia, for appellees.

Kirk & Rather, of Tuscumbia, for appellant.

FOSTER, Justice.

The complaint shows that Victoria Taylor owned two houses, the "home place" and the "little house," and a lot of personal property; that she executed a mortgage on it all to complainant, without her husband joining in the mortgage; something like a year and a half later she died, and left surviving her husband, Henry Taylor, and a son by another marriage, Ozzie Cobb, as her only heirs and distributees. A few days later the surviving husband executed a mortgage to complainant on all the property to secure the same debt and $600 covering a different liability to him by Henry. Some months later Henry and Ozzie and complainant made an agreement in writing by which a partition of the property was to be effected so that Henry was to get the home place, and all the personalty except the small automobile, and Ozzie was to get the little house and the small automobile, and he agreed to pay $500 of the debts and expenses of the estate of Victoria, and Henry was to make another mortgage to complainant on all the property except the little house, and small automobile, and Henry and complainant were to pay out of such property all the balance of the debts; thereupon they each conveyed to the other that part he was to have by the partition, and Henry executed the mortgage to complainant as contemplated by the agreement.

There was an administration of Victoria's estate, and complainant paid all the debts and expenses of administration, including the $500 Ozzie assumed, except a part of the fees due the administrator.

Henry married again, and died leaving children, and a widow, who had the property set aside as exempt, and they are made parties.

Ozzie sold the little house; his purchaser died, and his administrator and heirs are made parties. It is also alleged that E. W. Gray procured execution sale of the same property against Ozzie and purchased at the sale, and he is made a party.

The bill prayed that his mortgage debt, including the amount of the claims against the estate of Victoria which he had paid, be ascertained, that the entire debt, including such amount, be adjudged to be superior to the claims of the respondents, and that the property be sold to satisfy it; and that the little house be subjected to the satisfaction of the $500 paid for Ozzie, with the interest on it. The court sustained demurrer, and complainant appeals.

It is apparent from what we have said that at the time of the death of Victoria, the mortgage which she had given to complainant was valid as to the personal property included in it, and operated to create a debt, but that the mortgage did not affect the real property because her husband did not unite in its execution. But when subsequent to her death Henry executed a mortgage upon all the real and personal property, it served to pass his life estate; but did not pass the remainder then owned by Ozzie. But of course all the property was subject to the payment of the debt by pursuing the necessary course in the administration of the estate.

By the partition agreement Ozzie assumed the payment of $500 of the debts and expenses of administration, and Henry and complainant jointly assumed the balance. As between themselves thereby each became the principal debtor to that extent. And that agreement also made each a surety to the other to the extent that his property was bound for the payment which the other had assumed. Thomas v. St. Paul's M. E. Church, 86 Ala. 138, 5 So. 508; Tillis v. Folmar, 145 Ala. 176, 39 So. 913, 117 Am. St. Rep. 31, 8 Ann. Cas. 78; West Huntsville C. M. Co. v. Alter, 164 Ala. 305, 51 So. 338.

So that the principles of subrogation would operate if necessary to aid the surety to secure protection. 12 R. C. L. 1098, 1099; 60 Corpus Juris, 771; Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220; Cowart v. Aaron, 220 Ala. 35, 123 So. 229.

Another principle likewise seems also to operate for the benefit of complainant as mortgagee, for as such he has the right to protect his interest by paying off any valid lien or charge existing upon the property in his mortgage and add the amount of his mortgage debt and enforce it as such. 41 Corpus Juris, 605, 469.

If the debts so assumed by Ozzie, but thus paid by complainant, were not a charge upon the property of deceased because barred by the statute of nonclaim, the failure to comply with the statute is defensive, and not matter for demurrer. Buchmann v. Turner, 221 Ala. 563, 130 So. 196; section 5815, Code.

The result of that situation is to make Ozzie's property primarily liable for the $500 which complainant paid, and to give him a standing in equity to have it so declared. By such agreement that property is not to be held responsible for the other debts of the estate, in any conflict between complainant and Ozzie or those who occupy his position. We think that the equitable right of complainant is to have the court declare that his mortgage on all of the property of Victoria, except the little house and small automobile, is a valid security for all the debt due him, including the debts of Victoria,

which he has paid, and including any balance of the $500 assumed by Ozzie which shall remain unsatisfied by the application to its payment of the little house and small automobile. If the last-named property is of more than sufficient value to pay the $500 and legal interest, the balance should of course be decreed to those of the parties to the cause who occupy the place of Ozzie in its ownership. There are sufficient and proper parties here to have those rights adjudged.

■ The claim of Blankenship for fees as the administrator of Victoria's estate seems to be a liability chargeable to the property embraced in complainant's mortgage, since in the agreement between them, Henry assumed payment of all debts of Victoria, including costs of administration, except the definite sum of $500.

■ The appellee contends that the bill does not clearly show whether it seeks to enforce the mortgage, or complainant's claim as an unsecured creditor of the estate of Victoria. But we think the prayer of the bill, special and general, is sufficient to authorize and require the court of equity to grant such relief as the facts alleged, when proven, may justify, as we have here undertaken to analyze its nature, purpose, and the equitable rights resulting from its allegations.

■■ In respect to the second claim, we think it is clear that the bill shows a right to enforce the mortgage, including the amount of the debts of Victoria which he paid pursuant to the agreement or to protect his lien, not so much as a claim now against the estate of Victoria, but as a debt contracted by Henry. But whether it be treated as the debt of one or the other, it is not necessary to show a presentation of the claim against the estate to authorize enforcement of the mortgage. Arbo v. State Bank of Elberta, 226 Ala. 52, 145 So. 318, and cases cited.

■■ The third contention, that the bill seeks a sale of the lands of Victoria to pay her debts before exhausting the personalty, mistakes the equitable rights of complainant shown by the bill. The mortgage sought to be enforced is upon the real and personal property; when so, there is no duty to exhaust the personalty first. And when Ozzie assumed the payment of $500 his duty to Henry and complainant is not bound by the statute (see Code, § 5848) which first exhausts the personalty of an estate.

■■ We cannot agree that the bill is multifarious. Its purpose is to secure the payment of a mortgage debt. One transaction to which all else in the bill is subsidiary. When so, the claims of all persons who hold claims from the mortgagor alleged to be subordinate to the mortgage are necessary parties if their rights are to be affected by the

decree in order that the court may determine the claims of all such parties in respect to the property. Cullum v. Batre, 2 Ala. 415; Lyon v. Powell, 78 Ala. 351; Bolling v. Pace, 99 Ala. 607, 12 So. 796; Thomas v. Barnes, 219 Ala. 652, 123 So. 18.

■ This applies not only to that which by the partition vested in Henry, and became subject primarily to complainant's mortgage, but also to that which by the agreement of partition vested in Ozzie, subject to the amount of $500 of the debts and expenses of the estate. When complainant paid the $500, as alleged, it became a part of his mortgage debt, subject to the defense of the statute of nonclaim (Code, § 5815) to the extent that it may be applicable and if interposed, but to be paid primarily out of the property assigned to Ozzie.

We do not think that the bill is subject to the demurrer assigned to it, and the decree sustaining such demurrer must therefore be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

FOSTER, Justice.

■ The partition agreement mentioned in the opinion was in fact dated July 29, 1929, as pointed out in the application for rehearing, and the deeds and mortgage which such agreement provides shall be executed bear a date prior to July 29, 1929, but the bill alleges that the deeds were executed in compliance with the intent, spirit, and purpose of the partition agreement, or in consideration of the agreement, respectively, and that the mortgage was executed after the terms of the settlement had been fully agreed on, and before it was reduced to writing.

It is not necessary that there should have been a written agreement to explain the purpose and effect and consideration of the several deeds and mortgage. The partition was effected by the execution of the deeds. The execution of the mortgage in consideration of the assumption of certain debts is alleged to have been pursuant to a verbal agreement, which was later reduced to writing, and signed. The fact that by the terms of such writing the deeds and mortgage appear to be for future execution does not impair their effect as having already been executed. True, the agreement should more properly have recited the history of the transactions more accurately to show that the deeds and mortgage had then been executed, and then to stipulate the exact nature of their purpose as descriptive of the consideration. But since it does show what the agreement is, the fact that some of it had then been perfected, though not so

recited, does not impeach the validity of any of it.

It is not at all necessary that the administrator of Victoria shall convey the little house to Ozzie in order that he shall secure a good title. All the debts are alleged to be paid, likewise all the costs except a part of the commissions of the administrator. The court will so arrange its decree as that complainant must pay that as a condition to relief. When so, the administrator has no further interest, and Ozzie will need no deed from him. All the equitable rights of the parties are within the control of the court to be decreed to each as he is entitled, which we have fully described.

We do not think that there appears any error in our former opinion which needs alteration.

The application for rehearing is overruled.