## McCONNELL, Adm'r, vs. BEATTIE, Adm'r.

1. VENDOR BY TITLE BOND: *Rights of assignee of purchase notes. Duty to surety on.*

A vendor of land by title bond stands in the position of a mortgagee for the purchase money, and his rights pass to the assignee of the purchase notes, who may proceed against the purchaser to foreclose the lien, or against him and his sureties on the note personally, or any of them separately, or may prosecute all these remedies at once, *pari passu,* until satisfaction. But he must take care that the lien is not lost to the surety by his act or negligence; but to *stay the enforcement* of the lien is no defense to an action against the surety.

2. SURETY: *When subrogated to liens.*

A surety can not have subrogation to liens until he pays the entire debt.

APPEAL from *Crittenden* Circuit Court in Chancery.

Hon. L. L. MACK, Judge.

*Adams,* for appellant.

*Weatherford, contra.*

EAKIN, J. This suit was commenced in May, 1868, by petition in debt, by Andrew J. Cunningham, the holder of the notes, against J. M. Jones, who appeared, on the face of the notes, to be a surety for the maker, J. W. Dillard. The notes were for $500 each, dated December 1, 1860, and payable, respectively, on the first days of January, 1862 and 1863.

The answer sets up that the notes were given for the purchase of certain lands, by Dillard, upon which there was a lien retained; that they were assigned by the vendor and payee, one to Justice Rives and the other to Edwin Dickinson, and had become, each, entitled to a credit; that said assignees had filed bills in chancery, and had obtained de-

8

crees of foreclosure against the principal and the land, with orders for sale, and the appoinment of a commissioner for the purpose, who had proceeded to advertise the lands. Rives and Dickinson then sold and assigned the notes to plaintiff, who directed the commissioner not to proceed with the sale, and that the land is worth the sum due. Defendant claims that he is entitled to have the lands sold for his protection; or, on payment by himself, to be subrogated to the lien. He prays that the cause may be transferred to the equity docket; that said decrees may be enforced and the lands sold; or, if judgment be rendered against himself, that he be subrogated to the benefit of the decree (which he speaks of in the singular), and *declared entitled* to enforce the same against the land.

It appears, from the proceedings, that both parties died pending the suit, the later papers being in the name of their respective administrators.

Plaintiff replied in equity, admitting the facts of the answer, and showing that Dillard, the purchaser of the land, had (giving no date) sold the lands to one Beattie, by title bond, and that afterwards (Dillard having died) a title had been made to him by order of the probate court, and that Beattie had taken, and since retained, full possession. Plaintiff submits, on this reply, that the proper parties were not before the court to enable defendant to set up the defense attempted; and also demurs to the answer for want of parties and for want of equity.

Upon hearing, the chancellor found for plaintiff the amounts due on the notes; but, reciting the pending causes in equity, by their titles, and naming the parties, and alluding also to the orders of sale, and their suspension by Cunningham, directed: that the collection of the decree in this case be "*stayed until the sales above mentioned*," and that the

McConnell, Adm'r, vs. Beattie, Adm'r.

balance which might be due after appropriating the proceeds to the debt, should be certified to the probate court to be allowed against the estate of the defendant Jones. From this decree the administrator of Jones appealed.

The vendor of the lands, as respects the matters involved in this suit, stood in the position of a mortgagee for the purchase money, and his rights passed to the assignees of the notes. They might elect to proceed against the purchaser to foreclose the lien, or against all the makers of the note personally, or any of them separately; or, they might have proceeded upon all these remedies at once, *pari passu*, until satisfaction.

They were subject to one restriction. At their peril, they dealt with the lien upon the property, and were required to take care that it be not lost to the surety on the note by their act or negligence. The act of stopping the sale did not have that effect. The land remained bound, is worth the debt, and the lien may be enforced in favor of the surety when, by full payment, he entitles himself to subrogation. He can not have subrogation before, for whilst anything remains unpaid, the creditor is entitled, himself, to hold all the securities.

The plaintiff in this cause, by his purchase of the notes from the complainants in the chancery decrees, succeeded to their rights. As to the surety, who was not a party in the chancery suits, the notes were not merged in the decrees. The holders had the right to proceed upon them at law, and nothing set up in the answer constituted a defense. Whatever rights of subrogation the defendant might acquire by payment, or rights to enforce and carry into execution the original decree or decrees, for his indemnity, did not entitle him to delay the plaintiff in his suit at law. Upon an original bill, properly framed, or even on a

cross-complaint in this suit, bringing in the parties to the decrees, and seeking enforcement, the court would have gone on to enforce them for the exoneration or protection of the surety; and where that might be done without serious delay to the plaintiff, a chancellor might mould his decree to settle all rights at once; order the sales, ascertain the balance and render a final decree for that. The answer of defendant can not be taken as a bill for subrogation, or for the enforcement of the decrees. It lacks proper parties and contains nothing definite enough to found a decree upon. The decrees should have been specifically set forth with the parties, so that they might have day in court; the complainant (who is not plaintiff here) to show that he is entitled to retain his interest in the decree, if such be the case; and the defendants, to show cause why the decree should not be executed. The chancellor did well not to attempt any decree for enforcement of the former decrees. The course which defendant should have pursued for that purpose is clearly marked out by *sec. 4559 of Gantt's Digest,* as is also the extent of his immunity meanwhile against the plaintiff's rights. The third clause of said section provides that "the filing and prosecution of the cross-complaint shall not delay the trial and decision of the original action, when a judgment can be rendered therein that will not prejudice the rights of the parties to the cross-complaint." The decree for the money in this case against the surety, recognizes and enforces a legal right, which does not affect any right of subrogation, and the chancellor would doubtless have felt constrained to render it in any case, even if a proper cross-bill had been filed, and retained for other purposes.

If any one has the right to complain, it is the plaintiff, that the demurrer to the answer was not sustained, and

that the collection of his debt against the estate of defendant is stayed, and even its probate delayed, until he can execute, or have executed, the decrees. That depends upon himself, however, and, as he does not appeal, we will not interfere for him. Perhaps he recognizes in the decree a practical, common-sense view of what is right between man and man, which has prompted the chancellor to try and do substantial justice. We think that he has succeeded, although somewhat irregularly, and for that reason the decree must stand. Let it be affirmed.