JOHN CHILD & another *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY & another.

Suffolk.    March 19. — July 5, 1880.    AMES & LORD, JJ., absent.

By the terms of a mortgage made by a railroad corporation to trustees, to secure the payment of certain bonds with interest coupons attached, in case of default in payment of principal or interest, the trustees were to take possession of the property mortgaged for the purposes of foreclosure, and on the foreclosure becoming absolute, by such possession continuing a certain time, the bondholders might form themselves into a new corporation, with a capital stock equal to the outstanding mortgage debt, at a meeting at which each bondholder was entitled to cast one vote for " every one thousand dollars principal sum of such bonded debt held by him." It was further provided that the new corpora tion should consist of the holders of the mortgage bonds, " at the rate of ten shares for every bond of one thousand dollars, as said bonds shall be surrendered to said new corporation to be exchanged for certificates of stock at the rate aforesaid." While this mortgage was in force, the railroad corporation made a contract with A., by which the latter agreed that the interest maturing on a portion of the mortgage bonds should be paid at maturity ; that an agreement to that effect should be indorsed on these bonds; and that any interest which A. should be obliged to pay should be and remain a valid lien on all the property secured by the mortgage. *Held,* that, upon foreclosure of the mortgage, the capital stock of the new corporation was to be determined by the principal sum of the mortgage debt, without regard to the unpaid interest ; and that a holder of bonds, issued under the contract between the corporation and A., and who had received payment of interest from A., was entitled to ten shares of stock for each bond, without redeeming the coupons paid ; that A. was not entitled to any stock ; and that a person to whom A. had sold interest coupons when overdue had no greater rights than A.

BILL IN EQUITY, originally brought by John Child, the holder of certain mortgage bonds, issued by the Boston, Hartford and Erie Railroad Company, to compel the first-named defendant to issue to him, upon the surrender of the bonds, shares of stock in the defendant corporation.    John Foster, the holder of similar bonds, was, after the filing of the bill, allowed to join as a party plaintiff ; and the New York, Lake Erie and Western Railroad Company, the holder of certain interest warrants or coupons, once attached to the bonds held by the plaintiffs, was permitted to become a party defendant.    The case was heard by *Morton,* J., on the bill and answers, and reserved for the determination of the full court.    The facts appear in the opinion.

*F. W. Hurd*, for John Child.

*D. Foster*, for John Foster.

*T. K. Lothrop*, for the New York & New England Railroad Company.

*W. D. Shipman* (of New York), for the New York, Lake Erie & Western Railroad Company.

MORTON, J.  The rights of the parties in this case depend upon the true construction of the mortgage executed on March 19, 1866, by the Boston, Hartford and Erie Railroad Company, and known as the Berdell mortgage.  This mortgage was given to trustees to secure bonds, each in the sum of one thousand dollars, issued by the company to the amount of twenty millions of dollars, payable on the first day of January 1890, with interest at the rate of seven per cent per annum, payable semiannually on the first days of January and July in each year, upon the presentation and delivery of the proper interest warrants annexed to the several bonds.

By the provisions of the mortgage, in case of any default, in the payment of principal or interest, continuing for six months, the trustees are authorized to take possession of the road and other property mortgaged, for the purposes of foreclosure, and, if such default continue for eighteen months after notice of the entry to foreclose is given to the mortgagor, the foreclosure shall be absolute, and the whole of the property shall vest absolutely and in fee in the trustees.

The tenth article is as follows : " In case of an absolute foreclosure under the provisions of this instrument, it shall be the duty of the trustees to call a meeting of the holders of the mortgage bonds secured by this instrument, by an advertisement of the time and place and object thereof, at least three times a week, for three successive weeks, in newspapers published, one in the city of Boston, one in the city of Providence, one in the city of Hartford, one in the city of New York, and one in London, in England ; and the bondholders at such meeting may, at an election to be presided over by such of the parties of the second part or their successors as shall be present, and in which each bondholder may cast one vote for every one thousand dollars principal sum of such bonded debt held by him, choose from their number a board of directors of like

number with the then board, and may organize themselves into a corporation, with a corporate name to be selected by them, and a capital stock equal to such outstanding mortgage debt, divided into shares of one hundred dollars each,. which said corporation shall be invested with all the powers, privileges and franchises, and shall be subject to all the duties, liabilities and restrictions of the Boston, Hartford and Erie Railroad Company, and shall consist of the holders of the mortgage bonds secured hereby, at the rate of ten shares for every bond of one thousand dollars or of two hundred pounds sterling, as said bonds shall be surrendered to said new corporation to be exchanged for certificates of stock at the rate aforesaid. And the said parties of the second part shall by deed convey unto the said new corporation all the said mortgaged property, premises, estate and franchises, and all additions thereto, and all moneys remaining in their hands when they shall be fully paid and indemnified for their services and liabilities as hereinbefore provided; copies of which said deed shall be recorded or lodged wherever this instrument is required by law to be recorded or lodged; and upon the organization of the bondholders into a corporation, they shall file, in the offices of the several secretaries of state above named, copies of their proceedings in the organization, under their corporate seals, attested by their president and secretary, which shall be *prima facie* evidence in all suits for or against them that they are a corporation; and after that time no bondholder shall participate in the earnings of the mortgaged property until he surrenders his bonds to the new corporation, as herein provided."

The mortgagor failed to pay the interest warrants annexed to the bonds, and after the default had continued more than six months the trustees took possession of the mortgaged premises, in September 1871; and, after the lapse of eighteen months, the default still continuing, they called a meeting of the bondholders, at which meeting, viz. in April 1873, the New York and New England Railroad Company was duly organized as a corporation. In May 1873, the States of Massachusetts, Rhode Island and Connecticut, through which the road runs, severally passed statutes ratifying and confirming the proceedings of the bondholders by which the corporation was formed. In each of these statutes, the second section provides that " the capital

stock of said company shall not exceed two hundred thousand shares of one hundred dollars each; and the same may be issued to the holders of said bonds upon the surrender thereof to said corporation, as provided in said mortgage, at the rate of ten shares for every bond of one thousand dollars so surrendered."

It appears that, before the trustees had taken possession for the purpose of foreclosure, the Erie Railway Company, under a contract with the Boston, Hartford and Erie Railroad Company, to which we shall hereafter refer, had paid to certain holders of bonds secured by the mortgage a large number of the interest warrants, which upon such payment were detached from the bonds and delivered to said Erie Railway Company, and which it has since transferred to the New York, Lake Erie and Western Railroad Company, one of the parties to this suit.

The first question is whether the New York and New England Railroad Company is required to issue certificates of stock to the holders of the bonds at the rate of ten shares for every bond of one thousand dollars, and also to issue certificates of stock at the same rate to the holders of interest warrants which were due and unpaid at the time of the organization of the corporation. It seems to us clear that the purpose and understanding of the parties to the mortgage was that, if the trustees were obliged to foreclose, the holders of the bonds should form a corporation with a capital stock of twenty million dollars, and that certificates of the stock should be exchanged for the bonds to the same amount, at the rate of ten shares for each bond of one thousand dollars with all the unpaid interest warrants attached. The tenth article provides that the holders of the mortgage bonds may hold a meeting, at which each bondholder may cast one vote for every one thousand dollars principal sum of such bonded debt held by him, and may organize themselves into a corporation with " a capital stock equal to such outstanding mortgage debt," and that certificates of the stock shall be issued in exchange for the bonds, at the rate of ten shares for every bond of one thousand dollars. The article does not contemplate or provide for the case of interest warrants detached from the bonds, but treats the unpaid interest as an incident

of the principal debt. The expression " such outstanding mort-
gage debt," by which the limit of the capital is fixed, by natu-
ral construction refers to the principal sum of the bonded debt,
which alone has been previously mentioned. This was the con-
struction of the article adopted by the parties to the mortgage
when they organized the new corporation, and by the Legisla-
tures of the several States in the ratifying statutes, and is, we
think, the true construction.

It follows that the New York and New England Railroad
Company cannot issue certificates to the holders of the bonds
to the amount of their face, and also to the holders of the de-
tached interest warrants. It is required only to issue certificates
to the amount of the principal sum of the bonds, whether the
interest warrants have been detached or not.

But a more difficult question is whether, in cases where the
interest warrants have been detached, the corporation should
issue the certificates solely to the holders of the bonds, or in part
to them and in part to the holders of the detached interest war-
rants, in proportion to their interests in the whole mortgage
debt, principal and interest.

In an ordinary case of a bond with interest warrants attached
secured by a mortgage, if the holder of the bond should sell the
interest warrants, it may be that, when such holder realized the
proceeds of the mortgage by a foreclosure or otherwise, he would
hold them for the joint benefit of himself and the owner of the
interest warrants, upon the ground that the mortgage is security
for the whole debt, interest as well as principal; and it may be
that, if, upon foreclosure, the proceeds are not sufficient to pay
both, it would be equitable that they should be divided *pro rata*
between all who are secured by the mortgage. Whether, under
the peculiar terms of the Berdell mortgage, this result would
follow, in case any of the bondholders had before the foreclosure
sold their interest warrants by an ordinary contract of sale con-
taining no special terms affecting the rights of the parties to it,
we do not feel called upon to discuss. No party is represented
in this case who holds interest warrants thus acquired. The
only party to the case who holds detached interest warrants is
the New York, Lake Erie and Western Railroad Company. It
acquired the interest warrants from the Erie Railway Company

after they were overdue, and took only the rights of that company. The question therefore is whether the Erie Railway Company would be entitled, as the holder of detached interest warrants, to receive a portion of the stock which under the Berdell mortgage is to be issued in exchange for the bonds to which such warrants had been attached. If we assume that an ordinary purchaser of interest warrants would, under this mortgage, be entitled to share *pro rata* with the holder of the bond in the stock to be issued in exchange for the bond, yet we are of opinion that the Erie Railway Company, by its .acts and contracts, is estopped from asserting this right against the plaintiffs.

The Erie Railway Company did not acquire these warrants by an ordinary purchase in the market. On October 8, 1867, it entered into an agreement with the Boston, Hartford and Erie Railroad Company, to which the trustees under the Berdell mortgage were a party, having for its main purpose the regulation of the joint business of the two connecting railroads.

By the ninth article of this contract it is provided that the Erie Railway Company, " on the terms and conditions expressed herein, and to promote the prompt development of the business aforesaid, is to agree with the several holders of bonds to the amount of four millions of dollars, secured by a mortgage to the party of the third part, that the interest maturing on their respective bonds shall be paid according to the tenor of such coupons, which said agreement is to be written or printed on said bonds in the words and figures following, to wit: ' In consideration of the provisions of a contract of even date for the use of the Boston, Hartford and Erie Railroad, by the Erie Railway Company, the Erie Railway Company hereby agrees with the holder of this bond that the several interest warrants hereto attached shall be paid as they respectively mature. Witness the seal of the Erie Railway Company and the signature of its secretary at the city of New York, the eighth day of October A. D. 1867.' "
" And it is further agreed that any interest warrants which the said party of the second part shall be obliged to take up under the provisions of this contract or the indorsement which may be put on any of said bonds, shall be and remain a valid lien on all the franchises and property named in or secured by said

mortgage." By a subsequent agreement, dated July 9, 1868, the amount of the bonds of which the Erie Railway Company was to guarantee the payment of the interest warrants was raised to five millions of dollars, and the company agreed to purchase bonds to the amount of five millions of dollars, at the rate of eight hundred dollars for each bond of one thousand dollars. Under these agreements, the Boston, Hartford and Erie Railroad Company issued to the Erie Railway Company bonds to the amount of four million dollars or more, and the Erie Railway Company afterwards sold portions of these bonds after indorsing upon them the guaranty in the words provided in said ninth article. The bonds held by the plaintiffs in this suit are a part of the bonds thus sold and guaranteed. The Erie Railway Company under its said guaranty afterwards paid several of the interest warrants as they matured, which were detached from the bonds and delivered to the company.

Upon this state of facts we are of opinion that the Erie Railway Company could not in competition with the plaintiffs claim any right to the stock which under the mortgage is to be issued in exchange for their bonds. The plaintiffs bought their bonds with the agreement of the Erie Railway Company indorsed upon it, and upon the faith of the agreement. This agreement is essentially a guaranty. The company agrees that the several interest warrants shall be paid as they mature. If the maker of the bonds did not pay the interest, it was the duty of the guarantor to pay it. When the plaintiffs received the amounts of the interest warrants they had the right to regard it as payment and extinguishment of the interest, which diminished the amount of their debt and strengthened their security. To allow the company to treat the transactions as purchases of the interest warrants would make its guaranty of little or no value, and defeat the spirit of its agreement.

The stipulation in the contract of October 8, 1867, that the interest which the Erie Railway Company might be obliged to pay under its guaranty should remain and be a valid lien on the franchises and property secured by the mortgage, cannot affect the rights of the plaintiffs. It is not contained in the contract of the Erie Railway Company with the plaintiffs. The mere reference to that contract as the consideration of the guaranty

cannot fairly have the effect of incorporating into the guaranty its provisions and stipulations. This agreement might be of value to the Erie Railway Company in case the mortgaged property should be sufficient to pay the whole debt, both principal and interest, but it cannot defeat the rights of the plaintiffs under the guaranty which they held, nor alter the mode of foreclosure provided in the Berdell mortgage. *Haven* v. *Grand Junction Railroad,* 109 Mass. 88.

The Erie Railway Company stood as to the plaintiffs in the relation of a guarantor of the payment of the interest warrants ; it was under a direct obligation to pay them in case of default of the principal debtor. Having made the payments in pursuance of this obligation, it is not entitled to be substituted to the rights of the plaintiffs in regard to those warrants, because such subrogation would defeat or impair the security of the plaintiffs for their debt, would violate the spirit of the contract of guaranty, and would be inequitable and unjust. *Wilcox* v. *Fairhaven Bank,* 7 Allen, 270. *Virginia* v. *Chesapeake & Ohio Canal,* 32 Md. 501, 539. *Ketchum* v. *Duncan,* 96 U. S. 659, 662. *Union Trust Co.* v. *Monticello & Port Jervis Railroad,* 63 N. Y. 311.

We are therefore of opinion that, upon all the facts of this case, the New York, Lake Erie and Western Railroad Company is not entitled as against the plaintiffs to any portion of the stock which is to be issued in exchange for the bonds held by the plaintiffs, and that the New York and New England Railroad Company should issue to the plaintiffs certificates of stock to the value of their bonds, at the rate of ten shares for every bond of one thousand dollars.                                    *Decree accordingly.*