BANK OF FAYETTEVILLE v. LORWEIN.

Opinion delivered July 1, 1905.

1.  DECREE RENDERED BY MISTAKE—EFFECT.—Upon the equitable principle that he who asks equity must do equity, one who seeks to enforce rights based upon a decree rendered in his favor by mistake must stand, not upon the letter of the decree in his favor, but upon the merit in the cause of action upon which this decree was based.  (Page 248.)

2.  SUBROGATION IN CASE OF SURETYSHIP—PARTIAL PAYMENT.—Under the rule that a surety who has paid only a part of the debt for which he is liable cannot ask to be subrogated to the creditor's securities held for payment of the debt, an indorser of five notes given for the purchase money of land who has paid three of them to the holder is not entitled to enforce a lien on the land, as against the holder of the other two notes, until they also are paid.  (Page 249.)

3.  PROMISSORY NOTE—INDORSEMENT AFTER MATURITY.—An indorsee of a promissory note after maturity takes no greater rights than his indorser had.  (Page 249.)

Appeal from Washington Chancery Court.

T. H. HUMPHREYS, Chancellor.

Affirmed.

### STATEMENT BY THE COURT.

On January 19, 1895, Nugent sold and conveyed to Jones a tract of land in Washington County for $500, payable in five equal annual installments evidenced by five promissory notes bearing interest. The vendor's lien was expressly reserved in the face of the deed.

Nugent sold, indorsed and delivered the notes before maturity to Haupman, who in turn sold, indorsed and delivered them before maturity to appellee Lorwein. Lorwein brought suit in the Washington Circuit Court in chancery at the fall term, 1898, against Jones, Nugent and Haupman to recover on the notes, and subject the land to sale under the lien; and at that term, having failed to get service on Jones, he (Lorwein), recovered a personal decree against Nugent and Haupman, as indorsers, for the amount of the first three of the notes which were then due, and interest, and the cause was continued as to the other two notes not then due. Nugent and Haupman stayed the decree, and the same was subsequently paid, and the record satisfied. The payment was made for Haupman by the surety on the stay bond, and the three notes were surrendered to Haupman, who delivered them to appellant Bank of Fayetteville as collateral security for a debt owing by him to the bank. After the maturity of the two last notes, Lorwein caused summons to be served on Jones, Nugent and Haupman (whether in the suit which had been continued or a new suit brought in the same court, the record does not clearly disclose), and at the April term, 1900, of that court, on May 25, 1900, a decree was rendered in favor of Lorwein against Jones, Nugent and Haupman for $246.90, the amount of the two last notes and interest, a lien was declared on the land, and the commissioner of the court ordered to sell the land to satisfy the decree.

On July 31, 1900, during the same term, a decree, upon the intervention of appellant, was entered, without reference to the former decree, in favor of Lorwein for the two notes and interest, and of appellant for $326.25, the amount of the first three notes and interest which had been embraced in the satisfied decree of

1898, and the commissioner was ordered to sell the land to pay both debts, no preference being provided for in the decree.

The land was in 1901 duly advertised and sold by the commissioner under the decree of May 25, 1900, rendered in favor of Lorwein alone, and was purchased by Lorwein for $250, who gave his note for the amount in accordance with the terms of sale, with one Brown as surety. At a subsequent term the sale was by the commissioner reported to the court and confirmed, and a deed to Lorwein duly executed and delivered, and the note surrendered to Brown, the surety. Lorwein subsequently sold and conveyed the land to appellee Hall.

Appellant commenced the present suit against Lorwein, Brown and Hall, asserting a right, under the decree of July 31, 1900, to participate *pro rata* in the distribution of the proceeds of sale of the land, and asking a decree in its favor to that effect and a lien on the land.

It is shown by testimony that appellant's attorney had no information of the decree of May 25, 1900, and the sale thereunder, until after the confirmation of the sale to Lorwein; and that neither Lorwein nor his attorney had any information of the decree of July 31, 1900, until after the confirmation. This peculiar situation was brought about in the following manner, as explained in the testimony: Lorwein was originally represented in the suit commenced in 1898 by Messrs. J. V. & J. W. Walker, a firm of attorneys. The partnership existing between these gentlemen was dissolved while the Lorwein suit was pending, and in the division of the firm's business this case fell to Mr. J. W. Walker, and the other member thereafter had no connection with it. The decree of May 25, 1900, was procured by J. W. Walker, who was absent from the county during the remainder of the term of the court. Mr. Gregg, the attorney for appellant, had no information of the decree of May 25, 1900, and, believing that Mr. J. V. Walker was still acting for Lorwein, submitted the draft of the decree of July 31, 1900, to him for approval, and Mr. Walker, as an act of courtesy to Mr. Gregg and his former partner, assumed the authority of approving a decree about which, so far as the record shows, he had no information as to any controversy. The chancellor dismissed the complaint in this suit for want of equity, and the plaintiff appealed.

*L. W. Gregg,* for appellant.

Appellant was entitled to its *pro rata* portion of the fund, and the courts erred in giving the appellee priority. 47 Ark. 296; 38 Mo. 496; 36 Miss. 419; 1 N. J. Eq. 388; 26 N. H. 317; 55 Tex. 243; 58 Tex. 371; 51 Ark. 105.

*J. Wythe Walker,* for appellees.

The court properly held that, the appellant having acquired the notes after maturity and after they had been paid off, the appellee was entitled to priority. 1 Jones, Mortg. § § 943, 944, 945; 30 Ark. 755.

McCulloch, J. There is no equity in the complaint, and the same was properly dismissed. Appellant's contention is that the decree of July 31, 1900, during the same term of court operated as a vacation of the former decree, and that, as no preference was given in that decree, the bank must be permitted to share in the proceeds of sale. Conceding that such was the effect of the last decree, it does not follow that appellant is entitled to the relief asked. It has come into a court of equity asking the exercise of the peculiar powers of that court to grant affirmative relief, and it must "do equity." In other words, it must stand, not upon the letter of the decree in its favor which was entered through a mistake, but upon the merit or lack of merit in the cause of action upon which the decree was entered.

Was appellant entitled, upon its intervention in the original suit, to a decree declaring a lien in its favor sharing equally with Lorwein in the sale of the land? That is the question presented. Learned counsel for appellant contends that the bank was entitled to so share, under the ruling of this court in *Penzel* v. *Brookmire,* 51 Ark. 105, that, in a controversy between the several holders of separate notes secured by the same mortgage, whether the notes be transferred before or after maturity and regardless of the order of maturity, they "stand *aequali jure,* and consequently are entitled to participate ratably in the fund derived from the security, if there be not enough to pay all." The facts are essentially different here, however, and a different rule must prevail. The three notes now held by appellant were merged in the decree of 1898 in favor of Lorwein against Nugent and Haupman, and the latter, though by payment of the decree he

became subrogated, as against the maker and prior indorsers of the notes, to the rights of Lorwein, cannot assert those rights against Lorwein's lien for the other two notes, because he is liable to Lorwein as indorser for payment of all the notes. So long as the other two notes and the lien on the land for payment thereof remained unsatisfied and his liability to Lorwein continued, he is postponed in the assertion of a lien on the land, and cannot claim the right to participate in the proceeds of sale.

A surety or indorser on a note who has paid only a part of the debt for which he is liable, leaving the balance unpaid, cannot claim, by subrogation, the right to participate in the securities held for the payment of the debt. He must first pay the whole debt. *McConnell* v. *Beattie,* 34 Ark. 113; *Schoonover* v. *Allen,* 40 Ark. 132; Sheldon on Subrogation, § 127; *Columbia Finance Co.* v. *Kentucky Union Ry. Co.,* 60 Fed. 794; *Magee* v. *Leggett,* 48 Miss. 139; *Gannett* v. *Blodgett,* 39 N. H. 150; *Child* v. *New York, etc., Ry. Co.,* 129 Mass. 170; *Bartholomew* v. *Salina First Nat. Bank,* 57 Kan. 594; *Receivers of New Jersey Midland Ry. Co.* v. *Wortendyke,* 27 N. J. Eq. 658. The New Jersey court in the case last cited said: "The right of subrogation cannot be enforced until the whole debt is paid; and until the creditor be wholly satisfied, there ought [to] and can be no interference with his rights or his securities which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim."

Appellant received the notes from Haupman after maturity and charged with notice of the decree rendered upon them. It succeeded only to the rights of Haupman, and can assert no greater rights.

It appears that the land was fairly sold by the commissioner, and the sale was confirmed by the court, and it brought no more than enough to satisfy Lorwein's decree for the amount of the two notes held by him, interest and cost of suit. Therefore appellant shows no right to any of the fund.

Decree affirmed.