RICHESON *v.* NATIONAL BANK OF MENA.

Opinion delivered December 5, 1910.

1. SUBROGATION—SURETY PAYING PART OF SECURED DEBT.—A surety who has paid all of his principal's debt for which he was liable will not be entitled to be subrogated to a mortgage held by his principal's creditor so long as any indebtedness for which the mortgage is a security remains unpaid. (Page 600.)

2. CORPORATIONS—POWERS.—Under the general rule that a corporation can only do those things which are necessary to carry into effect the purposes for which it was organized, and can make no contract that is not expressly or by fair implication authorized by its charter, a corporation not expressly authorized to do so cannot ordinarily contract to become a surety for or lend its credit to another person or corporation. (Page 602.)

3. SAME—ULTRA VIRES CONTRACT—WHEN ENFORCED.—When an *ultra vires* contract entered into by a corporation has been fully performed by

the other party, and the corporation has had the benefit thereof, the contract is binding upon such corporation.   (Page 602.)

4.  MORTGAGES—DESCRIPTION OF DEBT.—A mortgage which describes the indebtedness intended to be secured as two certain notes and all other and further sums and amounts that may be advanced to the mortgagor by the mortgagee is sufficient to put a person examining the records upon inquiry.   (Page 604.)

5.  BANKS AND BANKING—NATIONAL BANK—EXCESSIVE LOAN.—The action of a national bank in making an excessive loan contrary to the national banking law can be objected to only by the United States, and cannot constitute a defense in favor of the debtor.  (Page 605.)

Appeal from Polk Chancery Court; *W. H. Collins,* Special Chancellor; affirmed.

*Willard P. Cave,* for appellant.

1.   Under the facts in this case, the only valid indebtedness secured by the mortgage was the two five thousand dollar notes upon which appellant was surety.   This being true, appellant would be subrogated to the entire rights of the mortgagee, and entitled to priority of payment.  1 Jones on Mortgages (2 ed.) ¶ 881; Baylies on Sureties & Guarantors, 368, 369, § 5; 27 Cyc. 1070; *Id.* 1065.

2.   The alleged assumption by the loan company of the lumber company's indebtedness was wholly executory, and so remains by reason of the fact that the loan company has paid out nothing under such assumption and guaranty.   The contract was *ultra vires,* the loan company's charter not authorizing the corporation to become surety for others, and either party can plead its want of authority to make the contract.   Kirby's Dig. §. 839; Green's Brice's Ultra Vires, 252; 1 Clark & Marshall on Priv. Corp. ¶ 213; *Id.* 548, ¶ 208; 139 U. S. 24; 4 Clark & Marshall, Priv. Corp. ¶ 213; Child's Suretyship & Guaranty, 61, ¶ 52; 2 Beach, Priv. Corp. 706, ¶ 426; 2 Cook on Corp. § 774; 4 Thompson on Corp. ¶ 5739; 85 Ark. 185; 107 S. W. 676; 130 S. W. (Ark.) 162; 1 Clark & Marshall, Priv. Corp. ¶ 184; Baylies, Sure. & Guar., § § 2 and 3, pp. 46-48; *Id.* § 7, p. 17; 3 Thompson, Corp. ¶ 3990; 4 *Id.* 5721; 10 Cyc., 1109, § 7; 70 Ia. 541; 7 Wis. 59; 38 N. Y. St. 602; 85 Tenn. 793; 91 Pa. St. 367; 50 Conn. 167.

*Wright Prickett* and *Elmer J. Lundy,* for appellee.

1.   The appellant can not question the validity of the mortgage, or a part of it, on the ground that it is vague, indefinite or uncertain.   The description of the indebtedness sought to be secured was sufficient to put interested parties on inquiry, and that was sufficient.   1 Jones on Mortgages (6 ed.), § 342, p. 279; *Id.* § 343, p. 280; *Id.* § 364 *et seq.;* 46 Ark. 70; 55 Ark. 569; 20 Am & Eng. Enc. of L. (2 ed.) 925; 120 U. S. 765; 27 Cyc. 1059.   Neither can he question it as a creditor without notice. He had actual notice of the mortgage when made; moreover, he is charged with notice of it from the time it was recorded. Kirby's Dig. § § 5395, 5396; 40 Ark. 430; 1 Jones on Mortgages (6 ed.) § 524; Bispham's Eq. (2 ed.) 338, § 270.   He is estopped to deny its validity, because he knew it was made at the time he signed the notes, and offered no objection to its terms.   11 Am. & Eng Enc. of L. (2 ed.) 436; 53 Ark. 196.

2.   Appellant is in no position to question the validity of the loan company's assumption to the bank's debt.   The loan company under some circumstances might plead *ultra vires,* but it has not; on the contrary, asserts its liability under the assignment.   A stranger to the transaction, to whom the corporation owes no duty, can not set up this plea.   29 Am. & Eng. Enc. of L. (2 ed.) 80; 10 Cyc. 1166; 105 U. S. 166.   The lumber company can not attack it as *ultra vires*.   98 U. S. 621; 70 Ark. 232; 81 Mo. 26; 157 Mass. 548.   The assumption of the debt, under the circumstances of this case, was not in fact *ultra vires*.   7 Am. & Eng. Enc. of L. (2 ed.) 701; *Id.* 755.   The president of the lumber company had authority to execute the mortgage; but if he did not, neither appellant nor the company can now question his act as *ultra vires*.   10 Cyc. 1148-9; 29 Am. & Eng. Enc. of L. (2 ed.) 86; *Id.* 88.

3.   The lumber company having received and expended the $5,000 for which the note of S. G. Richeson was given, it could not escape liability by claiming that the note was not signed until the mortgage was given.   70 Ark. 232; 98 U. S. 621.

4.   Appellant will not be heard to claim that the loan was a violation of the national banking laws.   The loan, though in excess of the amount prescribed by statute, can be recovered in full from a borrower.   96 U. S. 640; Magee on Bank and Banking, 325, § 228.

5. A surety's right of subrogation is limited to the rights arising under the debt he pays. Sheldon on Subrogation, (2 ed.) 166; 27 Am. & Eng. Enc. of L. (2 ed.) 210. A surety for part of a debt can not be subrogated while the other part remains unpaid. Sheldon on Subrogation, 172; *Id.* 190-191; 27 Am. & Eng. Enc. of L. (2 ed.) 211; 2 Bouvier's Law Dict., Rawle's Revision, 1056; 53 Ark. 303. The right will not be enforced to defeat or interfere with equal equities of others. 1 Jones on Mortg. § 874; *Id.* § 885-b; 27 Am. & Eng. Enc. of L. (2 ed.) 204; Bispham's Equity, (2 ed.) § 338; 53 Ark. 303; 34 Ark. 113; 40 Ark. 132; 76 Ark. 245. Conventional subrogation has no application in this case. It arises only upon an agreement which must be express and specific. 1 Jones on Mortg., § 874b; Sheldon on Subrog., § 248, p. 372. ·

FRAUENTHAL, J. This is an appeal from a decree of the Polk Chancery Court determining the priority of liens of certain creditors upon the property of the Howard Lumber Company, a domestic manufacturing and business corporation, of whose assets said chancery court had taken charge under insolvency proceedings instituted against it. In February, 1909, the Howard Lumber Company was largely indebted to various creditors, and, though it had assets ordinarily worth more than its liabilities, it was pressed for money and unable to pay its debts. It was indebted to the National Bank of Mena (hereinafter referred to as the bank) in a sum, as claimed by that bank, amounting to $11,650, and to other creditors in various sums aggregating about $10,000. It was thought by the president and manager of the Howard Lumber Company (which will hereafter be referred to as the lumber company) that if sufficient money could be borrowed by it to pay the indebtedness of that company to all creditors other than the bank, and if said bank would extend the time of the payment of the debt due to it, the said lumber company could proceed with its business and succeed in paying all its liabilities. The cashier of the bank was also the president of the Hancock Land, Loan & Investment Company, a domestic corporation (which will be hereafter referred to as the loan company), and at a conference had by the officers of said bank and said loan company and the president of said lumber company an arrangement was effected by which the said lumber company could

borrow the required $10,000 from said loan company. There is a slight conflict in the testimony as to the terms of the agreement that was then made by these parties. We think, however, that the testimony tends to establish the following facts: S. G. Richeson was the president of the lumber company, with its place of business located in Polk County, and S. A. Richeson, the appellant, was his brother, and resided at Rothville, Mo. Practically all the shares of stock of the said lumber company were owned by the brother and other relatives of appellant. At the above conference it was agreed that the said loan company would lend to the lumber company the required $10,000 at a rate of interest of 10 per cent. per annum, and that the bank would extend the time of payment of the indebtedness due to it by the lumber company upon the loan company assuming and guarantying to pay said indebtedness. In consideration of the loan of said money and the assumption and guaranty of its said indebtedness to the bank, the lumber company agreed to execute to the loan company two notes for $5,000 each, with said appellant as surety thereon, due six months after date and bearing interest at the rate of 10 per cent. per annum, and to execute to the loan company a mortgage upon all its properties in order to secure the payment of said $10,000, and also the liability which it incurred by reason of its assumption and guaranty of the payment of said indebtedness due by the lumber company to the bank. In pursuance of the agreement, the board of directors of the lumber company adopted a resolution impowering and authorizing its president to negotiate a loan of $22,000 in order to pay the obligations it then owed, and to execute a mortgage upon all the property of said lumber company in order to secure said loan. The total amount of the indebtedness of the lumber company at that time consisted of the alleged debt of $11,650 to the bank and of about $10,000 to its other creditors, aggregating about the said sum of $22,000; and we think that the above resolution was adopted for the purpose of providing for the payment and security of the said above indebtedness. Thereupon the lumber company executed its two notes for $5,000 each to the said loan company bearing the above rate of interest and due six months after date, and sent same to appellant at Rothville, Mo., for his execution

thereof as surety, which was done, and same were returned on February 23, 1909. On that day the loan company executed to the bank its written obligation by which in consideration of the loan made by it to said lumber company and the agreement on the part of the bank to extend the time of the payment of its indebtedness against the lumber company it did "assume and guaranty the payment of said debt of $11,650, with interest," of the lumber company to the said bank; and in said written guaranty it is also stated that "the same shall be held and treated by all parties concerned as covered and secured by the terms and conditions of said mortgage." And on the same day and as a part of the same transaction the lumber company executed to the said loan company a mortgage on certain property therein described (which was substantially all its property) and said mortgage was duly filed for record on March 1, 1909. The indebtedness clause in said mortgage is as follows:

"This sale is on condition: That whereas the said Howard County Lumber Company is justly indebted to the said Hancock Land, Loan & Investment Company in the sum of ten thousand dollars ($10,000) evidenced by its two several promissory notes of date February 20, 1909, for five thousand ($5,000) dollars each, due and payable six (6) months after date with interest at the rate of 10 per cent. per annum from date until paid and for all other and further sums and amounts that may be advanced to the said Howard County Lumber Company by the Hancock Land, Loan & Investment Company from time to time, as well as all amounts assumed by the said Hancock Land, Loan & Investment Company for or on behalf of the said Howard County Lumber Company. Now, if the said Howard County Lumber Company shall pay said notes and all such other sums and amounts that may be assumed or advanced to it as provided in this instrument at the time and in the manner herein provided, then this conveyance shall be void, otherwise to remain in full force and effect."

The said loan company then loaned to the lumber company said $10,000, which was used by the lumber company in the operation of its business, and the bank extended the time of the payment of the indebtedness due to it by the lumber company

in conformity with said agreement. At the maturity of said two notes of $5,000 each in August, 1909, the surety, the appellant, paid same, and at his request the notes were sent to him. Later, on August 25, 1909, insolvency preceedings were instituted in said chancery court against said lumber company by its president under section 949 *et seq.* of Kirby's Digest. In said proceedings appellant filed an intervention, in which he claimed to be subrogated to the rights and indebtedness of the payee of said two notes which he had paid as surety of the lumber company and to the lien of the mortgage executed to secure the same, and therein claimed that he was entitled to a prior lien on the property conveyed by said mortgage. The loan company and the bank also filed interventions in said proceedings, and therein claimed that they were entitled by virtue of said mortgage to a first and prior lien on said property for the payment of the indebtedness of $11,650 due by the said lumber company to said bank and the payment of which said loan company had assumed and guarantied. The chancery court made a finding in favor of said interveners, the loan company and the bank, and rendered a decree declaring them entitled to a prior lien on all the property described in said mortgage. From this decree the intervener S. A. Richeson has appealed to this court.

The rights of the interveners to have lien impressed upon the property of the lumber company depend upon the terms of the mortgage executed by the lumber company to the loan company; and the priority of such liens between themselves depends upon the legality of the indebtedness claimed by each intervener and the equities existing between them. The lumber company became liable to the appellant by reason of his having executed the two notes of $5,000 each as surety for it; and when as surety he paid the two notes the lumber company became indebted to him in the amount thereof. By the payment of the debt by him as surety he became substituted in the place of the creditors whose debt he paid, and, ordinarily, he would succeed to all rights which the creditor had in relation to that debt. Ordinarily, when the surety pays the debt of his principal, he is entitled to the benefit of all securities for the debt held by the creditor. But the surety is only entitled to the benefit of such securities and rights which are applicable to the con-

tract on which he is bound. His rights are founded upon the equitable doctrine of subrogation, and where other parties have equal or superior equities or rights growing out of such contract the rights of the surety will not be enforced so as to interfere with such rights or equities of such other parties. The contract out of which grows the right of appellant to be subrogated to the lien of the creditor on the property is founded on the mortgage executed to the creditor, the loan company. Upon the face of the mortgage it secures to the loan company the payment of two debts: the one being the notes upon which appellant was surety, and the other being the assumption and guaranty of the indebtedness of the lumber company to the bank. If this latter liability is legal and binding on the loan company, then the appellant by paying only a part of the debt secured by the mortgage can not defeat the right of the loan company to have the property first applied to the payment of the balance of the debt secured by the mortgage. Before the surety can claim the right to the benefit of any of the securities, he must first pay the entire debt of the principal for the payment of which the securities were given. As is said in the case of *Bank of Fayetteville* v. *Lorwein,* 76 Ark. 245: "The right of subrogation can not be enforced until the whole debt is paid, and until the creditor be wholly satisfied, there ought to and can be no interference with his rights or his securities which might, even by bare possibility, prejudice or embarass him in any way in the collection of the residue of his claim." Sheldon on Subrogation, § 127; 4 Pom. Eq. Jur. § 1419; 27 Am. & Eng. Ency. Law 210; *McConnell* v. *Beattie,* 34 Ark. 113, and cases cited in *Bank of Fayetteville* v. *Lorwein, supra.*

Under the testimony adduced in the case we do not think that the appellant acquired any rights to the security superior to the loan company at the time he paid the two notes, by reason of any agreement then made between him and the loan company, or by any act or conduct on its part. At that time the notes were owned by a bank at Fort Smith, Ark., which had purchased same from the loan company, and which sent same to the bank at Mena, Ark., for collection. At the time of paying these notes the appellant required that they be transferred to him and not marked paid. The notes, without indorsement of

any kind, were turned over to the president of the lumber company, who forwarded them to appellant. The loan company was not the holder of the notes at the time of the payment thereof, and neither did it nor the bank by any word or act waive any right which they had by virtue of said mortgage to the prior payment of the balance of the indebtedness secured thereby.

But it is urged by appellant that the assumption and guaranty by the loan company of the indebtedness due by the lumber company to the bank was not authorized by the charter of said loan company, and that such contract of guaranty and assumption was as to said loan company *ultra vires;* and that the loan company was therefore not legally bound for said indebtedness. The loan company was a domestic corporation organized for the following purposes: "To do a general brokerage business, to loan money, negotiate bonds and securities and other property." Ordinarily, a corporation can only do those things which are necessary to carry into effect the purposes for which it was organized, and it can do no act and can make no contract that is not expressly or by fair implication authorized by its charter. Ordinarily, a corporation not expressly authorized to do so can not legally contract to become a surety for or otherwise to lend its credit to another person or corporation. *Simmons Nat. Bank* v. *Dilley Foundry Co.,* 95 Ark. 368. But a corporation will not be permitted to plead that it had exceeded its charter powers in making a contract where it has received the fruits and benefits of such contract. If the corporation has received the profits resulting from the compliance of the other party with the contract, it would be wholly unjust to allow the corporation to escape performance of the contract by which it realized these profits. As is said in the case of *Wright* v. *Hughes,* 119 Ind. 324: "The rule is now too thoroughly established to be longer open to question that where a contract has been executed and fully performed on the part of the corporation or of the party with whom it contracted, neither will be permitted to insist that the contract was not within the power of the corporation." In the case of *Minneapolis F. & M. Mut. Ins. Co.* v. *Norman,* 74 Ark. 190, the court quoted with approval the following statement of the law in this regard: "It is well settled that a corporation can not avail itself of the defense of *ultra vires* when the contract

in question has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance of the contract. * * * And, in general, the plea of *ultra vires* will not be allowed to prevail, whether interposed for or against a corporation, when it will not advance justice, but on the contrary will accomplish a legal wrong." *Arkadelphia Lumber Co.* v. *Posey,* 74 Ark. 377; *Bloom* v. *Home Ins. Agency,* 91 Ark. 367; *Dunbar* v. *Cazort & McGehee Co.,* 96 Ark. 308; 1 Clark & Marshall on Private Cor., 579; 10 Cyc. 1158; *Flint & W. Mfg. Co.* v. *Kerr Murray Mfg. Co.,* 56 N. E. 858.

In the case at bar the loan of the money by the loan company to the lumber company, the assumption by it of the indebtedness of the lumber company to the bank, and the extension by the bank of the time of payment of its debt, constituted one transaction; and the mutual benefits and obligations growing therefrom to the parties became indivisible. The loan company was engaged in loaning its money, and for its compensation it received the interest which accrued thereon. This benefit it actually received by the execution of this contract. The bank, by virtue of the assumption by it of the bank's debt against the lumber company, extended the time of the payment thereof. It could have taken steps to enforce its collection, but it stayed its hand by reason of the execution of this contract, and thereby it was caused to act to its disadvantage. It actually performed the contract on its part by thus granting the extension of the time of payment of the debt due to it. On the one part, therefore, benefits have been received, and on the other part the contract has been actually executed.

If the loan company had not assumed and guarantied the payment of this debt, the bank could have taken steps, by legal process or otherwise, to have secured the payment of its debt against the lumber company. It would accomplish a legal wrong against the bank to now permit the loan company to claim that it exceeded its powers when by its contract it caused the bank to refreain from action to obtain security for its debt. Having received the fruits and benefit of the contract and having caused the bank to act to its disadvantage, the loan company should not now be permitted to violate the obligation of this contract, which it made. So that the loan company would

not be permitted to avail itself of the plea of *ultra vires* against the enforcement of this contract, if it was making such a defense. It follows therefore that the agreement entered into by the loan company to assume and guaranty the payment of the debt of the lumber company resulted in a binding obligation against it.

It is also urged that the indebtedness clause of the mortgage is too indefinite to include, or to give notice that it included, this indebtedness which was guarantied by the loan company. But we think that the character of the indebtedness is sufficiently set forth in the mortgage, and that it includes this assumed debt. The written contract by which this debt was assumed was executed at the time the mortgage was given, just as the two notes were; and it is manifest, as the testimony conclusively shows, that the mortgage was intended to secure the loan company upon the liability which it incurred by the assumption and guaranty of this debt. As is said in the case of *Curtis* v. *Flinn,* 46 Ark. 70: "If the mortgage contains a general description sufficient to embrace the liability intended to be secured, and to put a person on examining the records upon inquiry, and to direct him to the proper source for more minute and particular information of the amount of the incumbrance, it is all that fair dealing and the authorities demand." *Hoye* v. *Burford,* 68 Ark. 256; *Cazort & McGehee Co.* v. *Dunbar,* 91 Ark. 400.

It is earnestly insisted by counsel for appellant that at the time of the execution of the said mortgage to the loan company the lumber company was only indebted to the bank in the sum of $6,650, and that therefore this was the total amount of debt assumed by the loan company and covered by the mortgage. It appears from the testimony that at the time of the execution of the mortgage there was an indebtedness due to the bank of $11,650. This was evidenced by two notes: one for $6,650 executed by the lumber company and the other for $5,000 executed by S. G. Richeson. Some time prior to February, 1909, S. G. Richeson, who was president and manager of the lumber company, executed his note to the bank for $5,000, and the money thereby obtained from and loaned by the bank was at once placed to the credit of the lumber company, and was wholly for the benefit of and used by the lumber company. The lower court found that this loan was really made to and was for the sole benefit of the lumber company, and not in truth for the

benefit of S. G. Richeson personally. It appears that on account of the capitalization of the National Bank of Mena it was not permitted under national banking laws to loan to one individual or corporation an amount in excess of the $6,650. At the time this $5,000 loan was secured the lumber company was indebted to the bank in the sum of $6,650, and on this account, while as a matter of fact the additional $5,000 was a loan made to the lumber company, the note therefor was executed by said S. G. Richeson to the bank and from time to time was renewed by him. The court found that this note of $5,000 was in fact the debt of the lumber company, and we think that its finding in this regard is sustained by sufficient evidence. . It has been held by the Supreme Court of the United States that the action of a national bank in making an excessive loan contrary to the national banking law could only be objected to by the Government, and that the debtor could not urge the prohibitive provisions of the national statute against a recovery of such excessixe loan. *Nat. Bank* v. *Matthews*, 98 U. S. 621; *Nat. Bank.* v. *Whitney*, 103 U. S. 99; *Gold Mining Co.* v. *Nat. Bank*, 96 U. S. 640.

It follows that the debtor, the loan company, can not avoid the payment of the money actually received by it from the National Bank of Mena, although it was in excess of the amount it was allowed to loan by reason of said statute. At the time of the execution of the mortgage, in February, 1909, the lumber company, recognizing that its indebtedness to the bank actually amounted to $11,650, executed the note for $5,000 which was given in renewal of the former Richeson note for that amount as well as the note for $6,650. Thereupon the loan company by its said written agreement expressly assumed said indebtedness of $11,650, and the mortgage was at the same time executed to secure the payment of that written assumption of the debt of the lumber company, which was stated in said written assumption or guaranty to be $11,650.

We are therefore of the opinion that there is sufficient evidence to sustain the finding of the chancellor that the lumber company did at the time of the execution of the mortgage actually owe to the bank the sum of $11,650, and that the loan company assumed the payment of that amount of indebtedness to the bank, and that it was the intention of the parties to secure

by the execution of said mortgage that amount of liability thus incurred by the loan company.

It follows that the lower court did not err in declaring in favor of appellees a prior lien upon the property described in said mortgage for the payment of the sum of $11,500 which the lumber company owed to the bank and the payment of which was assumed and guarantied by the loan company.

The decree is accordingly affirmed.