PEARSON *v.* SCOTT.

Opinion delivered March 9, 1925.

1.  BILLS AND NOTES—INNOCENT PURCHASER OF NOTE.—Evidence *held* to sustain a finding that the holder of a certain note was an innocent purchaser for value.

2.  VENDOR AND PURCHASER—VENDOR'S LIEN—ENFORCEMENT.—Under the rule that where one of two innocent persons must suffer the one whose act first made it possible for the injury to occur must suffer the consequences, *held* an innocent purchaser for value of one of a series of notes constituting a lien on land, after the other notes had been cancelled for fraud in their inception, is entitled to satisfaction out of the entire proceeds of sale of the land, though, if the other notes were valid, he would be entitled only to a *pro rata* share of the proceeds.

Appeal from Sevier Chancery Court; *C. E. Johnson,* Chancellor; reversed.

*J. S. Lake* and *Gordon Carlton,* for appellant.

Appellee has made no claim that the notes for $5000.00 each and the $4500.00 note were not merged and extinguished when the court by its decree cancelled the deeds which she had given Hunter and quieted her title

to the lands. The only exception from the doctrine of merger in such cases is where the manifest intention of the parties, or the ends of justice require that the rights be kept separate. 84 Ark. 277. If all the series of notes were outstanding obligations, there would be no contention but that, in the absence of special equities in the appellant, all should participate ratably in the proceeds of the sale; but here they are not outstanding obligations, and in addition the special equities in appellant do exist. 51 Ark. 105; 72 Ark. 350; 76 Ark. 245; 92 Ark. 291; 103 Ark. 473.

WOOD, J. This action was instituted by Flora G. Scott in the Sevier Chancery Court against F. M. Hunter *et al.*, to cancel certain instruments on the alleged ground of fraudulent representations made by Hunter and his agents, by which Mrs. Scott was induced to convey certain real estate to F. M. Hunter. In the original complaint Hunter, Isaac F. Tyson and Benjamin Davis were made parties defendant, and afterwards, by amendments to the complaint, W. L. Perkins, J. R. Pearson, G. W. Harmon, J. M. McPherson and John Tyson were also made defendants. The plaintiff, Mrs. Scott, alleged that the several parties named had entered into a conspiracy to cheat and defraud her out of her lands; that, as a result of the conspiracy, she executed two deeds to F. M. Hunter, in one of which was conveyed 1,887 acres and in the other 823 acres of land in Sevier County, Arkansas; that, as a part consideration for these deeds, F. M. Hunter exchanged certain property in Kansas City, Missouri, and executed certain notes; that in consideration for the 1,887 acres, Hunter executed to Mrs. Scott eight promissory notes, one for $1,900, due in one year; one for $4,500 due in two years; six for $5,000 each, due in five years, all bearing interest at the rate of 7 per cent. per annum; that a vendor's lien was reserved in the deed to secure these notes; that, as a result of fraudulent representations, the instruments set forth in the complaint were without consideration, and

void. She prayed that the instruments and notes be canceled, and that the defendants be enjoined from transferring certain notes, and for all legal and equitable relief to which she might be entitled. The answer of all the defendants, except Harmon, admitted the exchange of properties and the execution of the instruments and notes set up, but denied all the allegations as to fraud. The defendant Harmon demurred to the complaint, and his demurrer was overruled. He stood on his demurrer, and decree was rendered against him, canceling the $4,500 note which he held. On the hearing of the other parties of the issues raised by the pleadings, the court entered a decree also canceling the six notes for $5,000 each, in so far as they represented a lien upon the land, but these notes, and also the note for $4,500, by direction in the decree, were kept alive for the purpose of sharing with the $1,900 note in the distribution of the proceeds of the sale of 1,887 acres of land. The cause was continued as to J. R. Pearson, and, at a later day, was heard on the issues raised by the complaint and his answer and cross-complaint. The court found that he was a holder in due course of the note for $1,900 executed by Hunter to Mrs. Scott; that this note was a lien on the 1,887 acres of land, and directed that the land be sold to satisfy his lien, and that he be paid out of the proceeds of the sale a sum equal to the proportion that the note for $1,900 bore to the whole amount represented by the eight notes given as part consideration for the land. Pearson appeals from the decree ordering this distribution of the proceeds of the sale of the 1,887 acres.

The facts bearing upon the issues raised as to the allegations of conspiracy and fraud are fully set forth in the recent case of *Hunter v. Scott, ante* p. 1, where we affirmed the decree of the chancery court holding that the transaction by which Mrs. Scott exchanged and sold her property to Hunter was fraudulent. The present case grows out of and is a branch of that case, and we

refer to the facts there stated as helpful to a thorough comprehension of the issues raised by this appeal. It appears from the testimony in this record that the negotiations leading to the consummation of the deal between Mrs. Scott and Hunter were conducted by one Benjamin Davis. Mrs. Scott indorsed the note for $4,500 executed by Hunter to her, and delivered same back to Hunter, to be used by him in removing certain incumbrances from the property, which Mrs. Scott agreed to take as a part consideration for the conveyances made by her to Hunter. The note for $1,900 was indorsed by Mrs. Scott without recourse and delivered to Benjamin Davis, in payment of his commission for making the deal. The six notes for $5,000 were retained by Mrs. Scott, and were in her possession when the final decrees were entered in the case.

Davis, on the 14th day of November, 1921, borrowed of J. R. Pearson $1,600, for which he executed his note due February 14, 1922, with interest at the rate of 8 per cent. per annum from date until paid. As collateral security to this note, Davis indorsed and delivered to appellant the $1,900 purchase money note. Davis did not pay the $1,600 note executed to appellant for borrowed money, and, on the 2d day of July, 1922, appellant sold the collateral note of $1,900, and purchased the same himself, the consideration therefor being the amount of the principal note due him by Davis, with accrued interest. A witness who procured the loan for Davis from appellant testified that appellant did not know Davis until the witness introduced him. Appellant agreed to make the loan and advance to Davis the money. Witness saw him give Davis the check. Appellant acted in good faith in the transaction, without any knowledge of any fraud, collusion or conspiracy to defraud Mrs. Scott. The only business transaction witness had with appellant was the one in which he procured the loan from him for Davis.

The appellant himself testified that he was the owner of the note for $1,900; that he obtained it as collateral to

secure a personal loan of $1,600 that he made to Benjamin Davis. He made the loan upon the representation of Davis' agent that the loan was safe and would be secured by the $1,900 note on 1,887 acres of land in Sevier County, and that the note of $1,900 given as collateral security was the first lien note on the land, which was worth some $40 or $50 an acre, making the note perfectly safe. Appellant, before making the loan to Davis, asked him if the trade had been completed which they had talked about, and he stated that it was entirely completed, and that they had the deed to the Arkansas property. Davis and his agent came to the office of appellant, and produced the deed, which appellant mailed to the recorder at DeQueen, Arkansas. Appellant gave Davis checks for the amount of the loan, and exhibited the checks on the Commonwealth National Bank of Kansas City, Missouri. The check showed that it passed through the Kansas City Clearing House November 15, 1921. The deed, after having been recorded, was returned to the appellant. He made no effort to have the title to the property examined. Davis and his agent stated that it had been examined and had been found to be all right. Appellant had the deed and the collateral note for the $1,900 before him when the loan was made, and he knew that the note was one of a series amounting in the aggregate to $36,000, the note of $1,900 offered appellant as collateral being the first of the series to mature. Appellant did not know that Davis went through bankruptcy after this transaction, but reached the conclusion that he was irresponsible after he failed to pay his note.

The court correctly found, under the above evidence, that appellant was an innocent purchaser for value of the $1,900 note, and that he was entitled to recover the sum of $1,900 with interest thereon at the rate of 7 per cent. per annum, making the amount due appellant at the time of the rendition of the decree the sum of $2,199, and the decree of the court declaring such sum a lien on

the land described, and directing that same be sold for the satisfaction of the decree, was also correct.

But the court erred in directing that the commissioner pay appellant, out of the proceeds of the sale, a sum equal to the proportion that the note held by the appellant bore to the whole amount represented by the eight notes executed by Hunter to the appellee.

The court, by its decree on the other branch of the case, which was affirmed by us in *Hunter* v. *Scott, supra,* canceled all other conveyances, notes and incumbrances which might affect appellee's title, and revested the title in her, subject only to the lien of the $1,900 note in controversy. The six notes for $5,000 and the note for $4,500, held by Harmon, were merged in and extinguished by that decree. After that decree, these notes were no longer outstanding liens on the land and entitled to *pro rata* in the proceeds of the sale of foreclosure for the $1,900 note. As between the appellant and the appellee, the appellant's equities are superior to those of the appellee, for the appellee, by her act, although free from any fault or intentional wrongdoing, made it possible for the appellant to buy this $1,900 note, and he must suffer injury if her equities in the proceeds are declared equal to his. His equities must be protected and declared superior, under the doctrine that, where one of two innocent parties must suffer, the one whose act first made it possible for the injury to occur must suffer the consequences. If a series of purchase money notes contain no stipulation as to the order in which they should be paid, and without any agreement between the holders as to precedence of payment, in the absence of special equities, the proceeds of the sale should be applied *pro rata* in part payment of the several notes, irrespective of the dates of their maturity or assignment. See *Penzel* v. *Brookmire,* 51 Ark. 105; *Smith* v. *Butler,* 72 Ark. 350; *Bank of Fayetteville* v. *Lorwein,* 76 Ark. 245; *Cook* v. *Collins,* 92 Ark. 291; *Kissire* v. *Plunkett-Jarrel Grocer Co.,* 103 Ark. 473. But, in the case at bar, there are

special equities, as already indicated, in favor of the appellant, which entitled him to the proceeds of the sale without a ratable division or distribution with the appellee.

The decree of the trial court is therefore reversed, and the cause is remanded with directions to enter a decree in accordance with this opinion.